## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

Case No.  **2:22-cv-12039-DPH-JJCG**

Plaintiff,

Honorable Denise Page Hood
United States District Judge

v.

Honorable Jonathan J.C. Grey
United States Magistrate Judge

**FAMILY FIRST LIFE, LLC**, *et al.*,

Defendants.

_____

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS KHONSAVAN VONGDARA, SHANNON ADAMS, DONTE GRANT, VANESSA ISABEL POWELL, AND DARIO JOSEPH WICKHAM'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Plaintiff MARK W. DOBRONSKI ("Dobronski"), appearing *in propria persona*, hereby responds in opposition to Defendants Khonsavan Vongdara, Shannon Adams, Donte Grant, Vanessa Isabel Powell, and Dario Joseph Wickham's (collectively the "Movants") Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion") [ECF No. 41].

As shown in the accompanying brief, the Motion should be denied.

WHEREFORE, for the reasons set fort in the accompanying brief, Dobronski respectfully requests that this Court enter its order that the Motion be **denied.**

Respectfully submitted,

Date:  November 17, 2022

_____

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
(734) 330-9671
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

        Plaintiff,

v.

**FAMILY FIRST LIFE, LLC**, *et al.*,

        Defendants.

Case No.   **2:22-cv-12039-DPH-JJCG**

Honorable Denise Page Hood
United States District Judge

Honorable Jonathan J.C. Grey
United States Magistrate Judge

_____

# PLAINTIFF'S BRIEF IN OPPOSITION TO
# DEFENDANTS KHONSAVAN VONGDARA, SHANNON ADAMS, DONTE
# GRANT, VANESSA ISABEL POWELL, AND DARIO JOSEPH
# WICKHAM'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
# <u>PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.  Whether Movants' Motion should be dismissed for failure to comply with the requirements of E.D. Mich. LR 7.1(a)?

2.  Whether Plaintiff has Article III standing to bring the claims alleged in the Complaint?

3.  Whether Plaintiff has alleged viable claims under the TCPA, MTCCCA, and MHSSA to withstanding a motion to dismiss?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817, 833 (N.D.Ill., 2016)

*Campbell-Ewald v. Gomez*, 577 U.S.153,168, 136 S.Ct. 663, 674, 193 L.Ed.2d 571 (2016)

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019)

*Katz v. Liberty Power Corp., LLC*, 2019 WL 4645524, at *10 (U.S.D.C. Mass. September 24, 2019)

*Lopez v. Quicken Loans, Inc.*, 461 F.Supp.3d 638, 644 (E.D.Mich., 2020)

*Stevens-Bratton v. TrueGreen, Inc.*, 437 F.Supp.3d 648. 655 (W.D. Tenn., 2020)

*U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009)

*Worsham v LifeStation, Inc.*, No. 661, Sept. 2020 Term, 2021 WL 5358876, at *16–17 (Md. Ct. Spec. App., November 17, 2021)


M.C.L. § 445.111a

M.C.L. § 445.111b

M.C.L. § 445.111c

M.C.L. § 484.1125

47 C.F.R. § 64.1601(e)(1)

47 U.S.C. § 227

E.D. Mich. LR 7.1(a)

## I.     PRELIMINARY MATTERS

### A.     Movants Failed to Comply with E.D. Mich. LR 7.1(a)

Defendants Khonsavan Vongdara ("Vongdara"), Shannon Adams ("Adams"),

Donte Grant ("Grant"), Vanessa Isabel Powell ("Powell"), and Dario Joseph

Wickham ("Wickham") (collectively the "Movants") have failed to comply with E.D.

Mich. LR 7.1(a), and as such Movants' motion should be denied.

Movants represent in their motion:

> "Pursuant to E.D. Mich. L.R. 7.1(a)(1), Defendants sought
> concurrence in the relief sought herein and offered to
> discuss on October 26, 2022, via electronic mail.  Plaintiff,
> pro se, did not respond or concur with the relief sought
> herein."

[ECF No. 41, PageID.264].  The referenced email was sent late in the afternoon on

October 26, 2022, and the instant motion was filed the next day.

The Local Rules for the Eastern District of Michigan require a movant to seek

the concurrence of the opposing party prior to filing a motion. E.D. Mich. LR

7.1(a)(1). If concurrence is not obtained, the rule requires the moving party to state

in the motion that "there was a *conference* between the attorneys ... in which the

movant explained the nature of the motion and its legal basis and requested but did

not obtain concurrence in the relief sought[ ] or ... despite *reasonable* efforts specified

in the motion, the movant was unable to conduct a conference." E.D. Mich. LR 7.1(a)

(2) (emphasis added). *Rogers v. Ryan*, 2022 WL 1050304, at *1 (E.D.Mich., 2022).

Movants' instant motion does not satisfy this rule.

Sending an email to the opposing party in the late afternoon and filing the motion the next morning does not constitute a "reasonable effort[]" to seek concurrence. As one judge in this District has explained with respect to the rule's "conference" requirement:

> "The Oxford English Dictionary defines a "conference" as "the action of bringing together" or "meeting for conversation." Oxford English Dictionary, "Conference, n." (online ed. Nov. 2010), available at http://www.oed.com:80/Entry/38740 (last visited February 3, 2011). The idea behind the rule requiring counsel to "meet[ ] for conversation," of course, is to stimulate discussion about the dispute that is the subject of the motion in order to attempt a resolution that would not require court intervention. The point was made well by the court in *Loparex, LLC v. MPI Release Technologies, LLC*, Case No: 09-1411, 2011 WL 1871167 (S.D. Ind. May 16, 2011):
>
> The local rule contemplates an actual meeting with a date, time, and place—whether by telephone, video conference, or (if counsel's location permits) preferably face-to-face. An old-fashioned chat over coffee might prove especially productive. Real-time interaction often provides the best forum for hashing out disputes, whereas a faceless exchange of carefully worded and often pointed emails usually solves little except perhaps providing a false moment of triumph to the person pressing the 'send' button." 2011 WL 1871167, at *2.

*Shehee v. Saginaw County*, No. 13-13761, 2014 WL 12604850, at *1 (E.D. Mich.

Nov. 19, 2014). Movants' counsel made absolutely no attempt at telephoning or otherwise "conferencing" with Dobronski prior to filing the instant motion.  By the time that Dobronski had received the email, the instant motion had already been filed.  Movants filed their motion in violation of the applicable rules.  Therefore, for this reason alone, the court should dismiss Movants' motion. Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District; inasmuch as defendant has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that defendant seeks to obtain. *U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009).

### B.     Movants' Unfounded Personal Attacks Upon Dobronski; Blaming the Victim.

Like a lot of TCPA lawbreakers, Movants blame the victim for catching Movants. The fact that Dobronski has received TCPA violating calls and filed several TCPA lawsuits against TCPA violating companies does not provide any defense to Movants. See *e.g. Katz v. Liberty Power Corp., LLC*, 2019 WL 4645524, at *10 (U.S.D.C. Mass. September 24, 2019); *Cunningham v. Rapid Response Monitoring Services*, 251 F. Supp. 3d 1187, 1196 (M.D. Tenn. 2017).

It is true that the Dobronski has brought a number of TCPA cases. It is further true that Dobronski has telephone answering and recording equipment which is more sophisticated than that of the average consumer. It is not true that Dobronski seeks

to receive such calls. Dobronski does nothing to attract the calls; in fact, Dobronski's telephone numbers are listed on the National Do Not Call Registry. [ECF No. 1, PageID.19-20, ¶ 49.] Routinely, throughout the Complaint, are examples of where Dobronski attempted to telephone the callers and make demand that the calls cease, but Dobronski was thwarted because the callers had "spoofed" their caller identification number information in violation of 47 C.F.R. § 64.1601(e). [ECF No. 1, PageID.28, ¶ 90; PageID.30, ¶ 100; PageID.30, ¶ 84; PageID.31, ¶ 89; PageID.33, ¶ 100; PageID.35, ¶ 117; PageID.36, ¶¶ 119, 124; PageID.37, ¶ 130; PageID.38, ¶¶ 131-132, 137; PageID.41, ¶ 152; PageID.43, ¶¶ 163, 167; PageID.44, ¶ 172; PageID.46, ¶ 182; PageID.47, ¶ 194]. Dobronski also made demands to be placed upon callers internal "do not call" lists, to no avail. [ECF No. 1, PageID.38, ¶ 136; PageID.49-50, ¶ 200; PageID.50, ¶ 202; PageID.51, ¶ 203]. Rather, Dobronski uses his equipment to record and document TCPA calls when they do occur. This does not deprive Dobronski of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted his or her house to be broken into. See, *e.g.*, *Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 783 (N.D. W.Va., 2017).

The private right of action under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private attorneys general". *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th

4

Cir. 2005). The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives for private enforcement of law." *Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D.Tenn., 2017).

By bringing his TCPA actions to bar, Dobronski is doing precisely what Congress has asked for the citizens to do – enforce the law. Movants may certainly find this distasteful, since Movants appear to be a prime violators of the TCPA and state telemarketing laws, and have found themselves in Dobronski's crosshairs. In the lyrics of the theme song to the television show *Beretta* sung by the legendary Sammy Davis Jr.: "Don't do the crime if you can't do the time." As Dobronski's lawsuit will clearly show, Movants did the crime.

## C.    An Amended Complaint is Forthcoming

Dobronski also wishes to alert the Court to the fact that an amended complaint is forthcoming. The amended complaint will add at least one additional defendant, expand upon the allegations set forth in the existing complaint, and also add additional allegations as to additional illegal telephone solicitations received subsequent to the filing of the original complaint. Dobronski had hoped to await until

some rudimentary discovery had been conducted before filing an amended complaint, in order to conserve the Court's resources. However, given the hostile posture of the collective defendants, it appears that Dobronski will need to file an amended complaint sooner, rather than later; and, then, after discovery may have to yet further amend the complaint.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given. *Mussa v. Cleveland Tankers*, 802 F.Supp. 88 (E.D.Mich.,1992). The general rule is that filing an amended complaint moots pending motions to dismiss. *Crawford v. Tilley*, 15 F.4th 752, 759 (C.A.6, 2021).

## II.   ARGUMENT

### A.   Dobronski Has Article III Standing

Movants argue that this Court should dismiss Dobronski's TCPA claims because Dobronski fails to allege facts showing Article III standing. [ECF No. 41, PageID.279-281].

In his Complaint, Dobronski alleges, *inter alia*, that he "suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion" [ECF No. 1, PageID.22, ¶ 60], "the injury of occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls" [ECF No. 1, PageID.23, ¶ 61], "injury in the form or nuisance and

6

annoyance to [Dobronski]" [ECF No. 1, PageID.23, ¶ 62], and "trespass to [Dobronski's] chattel." [ECF No. 1, PageID.23, ¶ 63].

The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019). In enacting the TCPA, Congress saw fit to create a private right of action setting forth statutory damages which recipients of illegal robocalls are entitled to. See 47 C.F.R. § 227(b)(3) and (c)(5).

The TCPA, which was enacted to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion. *Aranda v. Caribbean Cruise Line, Inc.*, 202 F.Supp. 3d 850, 858 (N.D. Ill. 2016); *Lyngaas v. Curaden AG*, 2022 WL 3931455, at *5 (E.D.Mich., 2022). This Court is bound by the Sixth Circuit Court of Appeals, which holds that the receipt of an unsolicited advertising or telemarketing message is itself a concrete injury for the purposes of the TCPA because such messages "waste the recipients' time and impede the free flow of commerce." *Herrick v. QLess, Inc.*, 216 F.Supp.3d 816, 818 (E.D.Mich., 2016) citing *American Copper & Brass, Inc. v. Lake City Industrial Products*, 757 F.3d 540, 544 (6th Cir. 2014).

## B.   Plaintiff Has Sufficiently Plead that Movants Used an Automated Telephone Dialing System

Next, Defendants alleged that Dobronski fails to allege that Movants used an automated telephone dialing system ("ATDS") utilizing a random or sequential number generator.

In his Complaint, Dobronski alleges that "[a]s part of their telemarketing programs, Defendants will outsource their outbound telemarketing to call centers utilizing automated telephone dialing systems *en masse* to consumers to develop prospective buyers for the insurance products." [ECF No. 1, PageID.25, ¶ 25]. Dobronski has further pled facts which give rise to the reasonable inference that an ATDS was used, including noting observing a 4-5 second delay after saying "hello" before a live telemarketer came onto the line [ECF No. 1, PageID.27, ¶ 82; PageID.31, ¶ 86; PageID.32, ¶ 95; PageID.33, ¶ 103; PageID.34, ¶ 107; PageID.37, ¶ 128; PageID.40, ¶ 149; PageID.41, ¶ 155; PageID.42, ¶ 160; PageID.43, ¶ 166; PageID.47, ¶ 190]; falsified caller identification information [ECF No. 1, PageID.28, ¶ 80; PageID.30, ¶ 100; PageID.30, ¶ 84; PageID.31, ¶ 89; PageID.33, ¶ 100; PageID.36, ¶ 119; PageID.36 , ¶ 124; PageID.38, ¶ 132; PageID.38, ¶137; PageID.41, ¶ 152; PageID.43, ¶ 163; PageID.43, ¶ 167; PageID.44, ¶ 172; PageID.46, ¶ 182; PageID.47, ¶ 194]; and, the use of a pre-recorded message [ECF No. 1, PageID.39, ¶ 140].

8

District courts have denied motions to dismiss that challenge the ATDS element of a TCPA claim where the complaint included some factual allegations about the calls or texts that make it plausible that they were made using an ATDS. *Lopez v. Quicken Loans, Inc.*, 461 F.Supp.3d 638, 644 (E.D.Mich., 2020). As an example, this Court declined to dismiss a TCPA claim, finding that the plaintiff sufficiently alleged facts to support a finding that the defendant used an ATDS when calling the plaintiff's cell phone where the plaintiff "pled that he either: (a) answered the call, no person spoke to him, and he heard nothing; or (b) did not answer the call and received a robotic, automated screeching and beeping voicemail." *Duchene v. Onstar, LLC*, 2016 WL 3997031 (E.D. Mich., 2016) (Hood, C.J.).

At best, Movants' motion is premature. At this juncture, the Court need not decide whether the dialing system had the present or the future capacity to dial numbers in a random or sequential fashion. *Garcia v. Pro Custom Solar LLC*, 2022 WL 95281, at *2 (E.D.Tex., 2022). Although liability is triggered only if the automated system actually "us[es] a random or sequential number generator," *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1171 (U.S., 2021), to store or produce the phone numbers called, "no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage." *Libby v. National Republican Senatorial Committee*, 551 F.Supp.3d 724, 729 (W.D.Tex., 2021). For this reason, Plaintiff need

only plead "sufficient facts to proceed with discovery, at which time he will have the opportunity to discover the precise technology that was used at the time of the alleged violations." *Id*. If at that time it becomes clear "the technology does not meet the definition set forth in the statute, as construed by the Supreme Court recently in Duguid, Defendant may move for summary judgment on that basis." *Id.*

### C.    Involvement of Movants in Calls 1-6, 8-11, 13-18, and 23-45.

Movants argue that all causes of action relating to Calls 1-6, 8-11, 13-18, and 23-45 must be dismissed as to Movants for failure to state a claim. [ECF No.41, PageID.284-285].  However, Movants provide sparse factual support and absolutely no statutory basis or case law to support its argument.

Plaintiff has already addressed, *supra*, the issue of an ATDS being used.  As to whether or not "[i]t would be pure speculation to assume that any of these calls were placed by Defendants" is best resolved by reviewing the Complaint.  There is ample evidence throughout the Complaint which ties each of the Movants to most, if not all, of the calls alleged in the Complaint.  For example:

- Vongdara has a tie to Call Numbers 1, 2 , and 4, as Vongdara sent an email forwarding an United individual life insurance application for "Derrick Simpson"; the information contained in the application having been "canary trap" data provided by Plaintiff during Call Numbers 1, 2,

and 4. [ECF No. 1, PageID.31, ¶ 90].

- Likewise, Vongdara has a tie to Call Number 10, as the live telemarketer called an asked for "Derrick Simpson" [ECF No. 1, PageID.37, ¶ 128], which is the "canary trap" name provided by Plaintiff during Call Numbers 1, 2, and 4 [ECF No. 1, PageID.31, ¶ 90].

- Vongdara has a tie to Call Numbers 5, 6, 8, 11.  The telemarketer on each of these calls with Olivia Perez.  During Call Number 11, "Perez disclosed that he manager is Khonsavan Vongdara, that they utilize third-party telemarketers located in Asia[] to transfer calls to Perez." [{ECF No. 1, PageID.38, ¶ 136].

- Vongdara has a tie to Call Number 9.  The same "Olivia Perez" identified as being involved in Call Numbers 5, 6, 8 and 11 also is involved in Call Number 9.  During Call Number 8, Perez gave her call back number as 904-453-8842. [ECF No. 1, PageID.35, ¶ 117].  During Call Number 9, the caller identification number displayed for "Olivia" was 904-453-8842. [ECF No. 1, PageID.36, ¶ 124].  The life insurance police issued as a result of Call Number 9 shows a witness signature by Vongdara. [ECF No. 1, PageID. 37, ¶ 125].

- Vongdara admitted to Plaintiff that the persons identified in the

11

Complaint as "Kevin", "John Murphy" and "Mr. Zion" all worked for Vongdara. [ECF No. 1, PageID.49, ¶ 200].  These individuals were telemarketers involved in Call Number 17 [ECF No. 1, PageID.42, ¶¶ 160, 162], Call Number 19 [ECF No. 1, PageID.43-44, ¶¶ 170-171], and, all Number 23 [ECF No. 1, PageID.47, ¶ 193].

• Vongdara has a tie to Call Number 19, as the life insurance application sent to Plaintiff was witnessed by Vongdara. [ECF No. 1, PageID.44, ¶ 173].

• Adams has a tie to Call Number 22, as the call was transferred to Adams who attempted to sell Plaintiff a life insurance policy issued by Americo. [ECF No. 1, PageID.46, ¶ 186].  During Call Number 22, the initiating telemarketer asked for "Bruce Petri." [ECF No. 1, PageID.46, ¶ 185], which "canary trap" identification was first utilized by Dobronski during Call Number 14 three days prior. [ECF No. 1, PageID.40, ¶ 150].

• Grant has a tie to Call Number 12, as Grant attempted to qualify Dobronski for a $20,000 life insurance policy. [ECF No. 1, PageID.39, ¶ 142].

• Powell has a tie to Call Number 7, as Powell pitched a $50,000.00 indexed universal life insurance policy to Dobronski. [ECFNo. 1,

PageID.34, ¶ 109].

•     Wickham has a tie to Call Number 21, as Wickham pitched a $10,000 life insurance policy to Plaintiff. [ECF No. 1, PageID.45, ¶ 181].

While it may be true that each of these named Movants may not have not directly initiated the telephone calls, it is clear that they each utilized third parties to do so. Defendants engage in outbound telemarketing to reach consumers for the purpose of marketing the various insurance products. [ECF No. 1, PageID.24, ¶ 69]. As part of their telemarketing programs, Defendants will outsource their outbound telemarketing to call centers utilizing automated telephone dialing systems to initiate telephone calls *en masse* to consumers to develop prospective buyers for the insurance products. [ECF No. 1, PageID.25, ¶ 70].  The Defendants are well aware of the illegal tactics being used by their contracted call centers, but are deliberately indifferent to what is occurring so as to be able to represent that they are "unaware" of the illegal telemarketing conduct. [ECF No. 1, PageID.26, ¶ 75].

During numerous of the calls, Plaintiff inquired of and received admissions from several of the named Movants that the calls were initiated from "their call center." [ECF No. 1, PageID.29, ¶ 99; PageID.33, ¶ 99; PageID.35-36, ¶ 118; PageID.38, ¶ 136; PageID.39-40, ¶ 143; PageID.49, ¶ 200; PageID.50-51, ¶ 202; PageID.51, ¶ 203].

13

Since Movants have failed to cite to any case law or other authority to support their argument, it is apparent that they must have forgotten about *Campbell-Ewald v. Gomez*, in which the United States Supreme Court recognized the vicarious liability of a non-seller and non-telemarketer for violations of the TCPA. See *Campbell-Ewald v. Gomez*, 577 U.S.153,168, 136 S.Ct. 663, 674, 193 L.Ed.2d 571 (2016). A company on whose behalf a telephone solicitation is made bears the responsibility for any violation of [the FCC's] telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call. *In re Rules and Regulations Implementing the TCPA*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005).

A party may be liable if it "personally 'makes' a call in the method proscribed by the statute," or "vicariously, such as, if it was in an agency relationship with the party that made the offending call." *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, at *4 (D. Ariz. Feb. 11, 2021) (quoting, in part, *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 F. App'x 678 (9th Cir. 2014)).

 In *Dish Network*, the FCC articulated as follows:

"[E]even when a seller does not 'initiate' a call under the TCPA, we conclude that it may be held vicariously liable for certain third-party telemarketing calls. In particular, we find that the seller may be held vicariously liable under federal common law principles of agency for

14

TCPA violations committed by third-party telemarketers. In this regard, we [hold] that a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."

*In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd.. 6574, 6584 (2013) ¶ 28.  Further,

"[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief."

*Dish Network*, 28 FCC Rcd. at 6588 ¶ 37.  Ultimately, the FCC concluded:

"[W]hile a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."

*Dish Network*, 28 FCC Rcd. at 6593 ¶ 48.

### D.    Plaintiff has Sufficiently Alleged That the Calls at Issue Were Initiated by or on behalf of Movants

Plaintiff has already addressed, *supra*, the involvement of the Movants in the

illegal telemarketing calls at issue.

15

### 1. Agency Relationship between Movants and the Party Who Placed the Calls.

Contrary to Movants' assertion, liability for a TCPA violation is not limited only to a person or entity who actually places a call. The TCPA can impose liability directly or vicariously upon any person or entity on whose behalf a third party places a call in violation of § 227(b)(1)(A). *Hartley-Culp v. Green Tree Servicing, LLC*, 52 F.Supp.3d 700, 703 (M.D.Pa., 2014).

In the instant case, as recited above, several of the Movants have admitted that they hired the third-party call centers to initiate telemarketing calls on their behalf. The third party telemarketing agents had either "formal agency" or "apparently authority" to perform the telemarketing tasks which they had been hired to perform. That is a classic agency relationship. And, as the Complaint repeatedly shows, the Movants ratified and accepted the benefits of the illegal conduct of its third-party telemarketing agents by attempting to sell Plaintiff life insurance products. A reasonable jury could conclude from the evidence that defendants all knew that their third-party telemarketers were placing unlawful calls to gin up business for them and accepted the benefits from this campaign. *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817, 833 (N.D.Ill., 2016).

### E. Count III - Abandoned Call claims

Movants have identified a typographical error in the Complaint. In fact, the

calls which were in violation of 47 C.F.R. 64.1200(a)(6) are Call Number 16 [ECF No. 1, PageID.42, ¶ 156], and 42 through 45, inclusive. [ECF No. 1, PageID.49, ¶ 197].

Plaintiff, in short order, will be filing a motion for leave to amend complaint, and will correct this typographical error as part of that amendment.

To the extend that Movants aver that "[i]t would be pure speculation to assume that any of these calls were placed by Defendants", the facts rise well above mere speculation. The caller identification number for each of the abandoned calls was 734-228-7840. [ECF No. 1, PageID.49, ¶ 197]. This is the same caller identification number for many of the other calls alleged in the Complaint, including Call Number 14 [ECF No. 1, PageID.40, ¶ 148], Call Number 15 [ECF No. 1, PageID.41, ¶ 154], Call Number 20 [ECF No. 1, PageID.44, ¶ 175], Call Number 22 [ECF No. 1, PageID.46, ¶ 184], and Call Numbers 24 through 40, inclusive. [ECF No. 1, PageID.48, ¶ 195]. Plaintiff has previously demonstrated the tie in between Movants and several of these calls originating from caller identification number 734-228-7840. Accordingly, it is plausible to believe that Movants also have a tie in with the abandoned calls originating from the same caller identification number.

## F.    Count IV Asserts a Claim for Relief Under § 227(c)(5).

Next, Movants argue that "[b]ased on the plain language of 47 C.F.R.

641200(c)(2), calls to cellular telephones can never qualify as calls to residential telephone subscribers." [ECF No. 41, PageID.290].   Movants further argue that "Plaintiff has not put forth any facts to show that he uses his cell phone for residential purposes." [ECF No. 41, PageID.290, fn 4].  Movants are flat our wrong in both respects.

First, the "do not call" proscriptions are also applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

> "The rules set forth in paragraph (c) and (d) in this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers...."

Second, the FCC has declared that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers."  *In the Matter of Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

Plaintiff has alleged in the Complaint that "Plaintiff's cellular telephone number 734-xxx-9671 [is] listed on the National Do Not Call Registry." [ECF No. 1, PageID.19, ¶ 49].  Plaintiff has further alleged in the Complaint that "Plaintiff utilizes his cellular telephone primarily for personal, family, and household use." [ECF No. 1, PageID.19, ¶ 48].

Likewise, Movants argument that "Plaintiff alleges one single inbound call in

violation of the TCPA (with the exception of Defendant Adams)" [ECF No. 41, PageID.291] is misleading at best.  Plaintiff's Complaint has documented over 45 illegal telemarketing calls. [ECF No. 1, PageID.49, ¶ 197]. Plaintiff has demonstrated, *supra*, that there are cross-ties between several of the Movants and multiple telephone calls set forth in the Complaint.  Further, Plaintiff has disclosed having received over 400 telephone calls to his telephone lines wherein the calling party identified as being with "Senior Benefits" or similar generic names and that, through the course of discovery, Plaintiff intends to establish that many of these 400 additional calls are related to the same defendants in this case, at which time Plaintiff will amend his claims against the defendants to include damages related to these additional calls. [ECF No. 1, PageID.51, ¶ 204].

### G.    Counts V, VI, VII, VIII, and IX are Viable Claims

Movants argue that each of Counts V-IX should be dismissed because "Plaintiff fails to set forth any factual allegations that Defendants initiated any call for telemarketing purposes without institution procedures for maintaining a list of persons who request not to receive calls." [ECF No. 41, PageID.293].

Movants argument is flat out false.  In the Complaint, Dobronski expressly "asked Vongdara for a copy of his written do not call policy, Vongdara did not have one." [ECF No. 1, PageID.50].

47 C.F.R. 64.1200(d) promulgates:

> "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has initiated procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity...."

In short, the mere initiation of a telemarketing call without having the required written procedures in place makes the *whole* of the telephone call illegal. See, *e.g., Stevens-Bratton v. TrueGreen, Inc.*, 437 F.Supp.3d 648. 655 (W.D. Tenn., 2020). Vongdara admitted that he did not have a written do not call policy. [ECF No. 1, Count V]. It follows, that absent a written do not call policy, Vongdara could not have been trained in following such a written policy because it was non-existent. [ECF No. 1, Count VI]; and further, that a do not call list was not maintained [ECF No. 1, Count IX.] Indeed, since Plaintiff's telephone numbers all appear on the National Do Not Call Registry [ECF No. 1, PageID.19, ¶ 49], Plaintiff should have never received even *one* of the alleged illegal telemarketing calls, let alone over 45.

It bears noting that, on June 16, 2022, Plaintiff made a demand to Olivia Perez, who works for Family First Life, LLC and Vongdara, to "place Plaintiff's telephone number on their do-not-call list." [ECF No. 1, Page ID.38, ¶ 136]. Despite this demand, and as detailed in the Complaint, Plaintiff continued to receive at least 25 more illegal telemarketing calls subsequent to June 16, 2022.

**H.     Private Right of Action for Violation of 47 C.F.R. 64.1601(e)(1) (Count X)**

Movants recite to three cases in the United States District Court for the Eastern District of Michigan wherein this same Plaintiff has been previously unsuccessful in arguing that there is a private right of action for violations of 47 C.F.R. § 64.1601(e). All three decisions (*Dobronski v. Total Insurance Brokers,* LLC, No. 21-10035, 2021 WL 4338957, at \*7 (E.D. Mich. May 14, 4021); *Dobronski v. SunPath Ltd*., No. 19-13094, 2020 WL 8840311, at \*7 (E.D. Mich July 20, 2020); and, *Dobronski v. Selectquote Insurance Services*, 462 F. Supp. 3d 784 790 (E.D. Mich. 2020)) expressly relied upon the finding in *Worsham v. Travel Options, Inc.*, No. JKB-14-2749 2016 WL 4592372, at \*7 (D. Md. September 2, 2016) as being "persuasive". The fact remains that none of the above-recited decisions are binding precedent upon any court, and certainly not this Court.

47 C.F.R. § 64.1601(e) was adopted by the FCC in 2003. See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144 (July 25, 2003) ("Final Rule"). The FCC expressly recites in the Final Rule that it has adopted the regulations set forth therein, including the newly promulgated § 64.1601(e), pursuant to the authority of 47 U.S.C. § 227 and the Do-Not-Call Implementation Act, Public Law 108-10, 117 Stat. 557. The entirety of the Final Rule addresses the regulatory requirements promulgated by Congress under the various

sub-subsections of 47 U.S.C. § 227(c). The TCPA requires the FCC "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). In so doing, 47 U.S.C. § 227(c)(1)(a) directs the Commission to "compare and evaluate alternative methods and procedures" including the use of electronic databases and other alternatives in protecting such privacy rights. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144-01 (FCC July 25, 2003).

In its summary of the Final Rule, the FCC states:

> "In this document, we revise the current Telephone Consumer Protection Act of 1991 (TCPA) rules, and adopt new rules to **provide consumers with several options for avoiding unwanted telephone solicitations**. These new rules establish a national do-not-call registry, set a maximum rate on the number of abandoned calls, **require telemarketers to transmit caller ID information**, and modify the Commission's unsolicited facsimile advertising requirements." [Emphasis added.]

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144 (July 25, 2003). Clearly, the requirement for caller identification is an alternative method or procedure in protecting such privacy rights. This leads to the reasonable conclusion that the FCC was acting within its delegated authority under 47 U.S.C. § 227(c) when it promulgated § 64.1601(e).

In *Worsham v. Travel Options, Inc.*, the judge was clearly having some

difficulty in determining under which subsection of 47 U.S.C. § 227 the subject

regulation – 47 C.F.R. § 64.1601(e) – was adopted.  In *Worsham v. Travel Options*,

the judge explained his quandry, as follows:

> "In recognition of the role played by Caller ID in helping
> consumers avoid unwanted calls, and in conjunction with
> other amendments to its TCPA regulations in § 64.1200 et
> seq., the FCC specifically amended this set of regulations
> in 2003 by adding § 64.1601(e), which requires
> telemarketers to transmit caller identification information,
> including either calling party number ("CPN") or automatic
> number identification of the calling party's billing number
> ("ANI") and, when available by the telemarketer's carrier,
> the telemarketer's name; this regulation also prohibited
> telemarketers from blocking the transmission of caller
> identification information. Rules and Regulations
> Implementing...(TCPA), 68 Fed. Reg. at 44,179. **However,
> it is not clear whether § 64.1601(e) is promulgated
> under either subsection b or subsection c of the TCPA**.
> Caller ID technology does not fit neatly into the focus of
> either subsection, neither of which requires the use of such
> technology to accomplish their respective purposes. **Thus,
> it is also not clear whether a violation of § 64.1601(e)
> falls within the private right of action granted by
> subsection b or subsection c.** It seems just as likely that
> **the FCC may have only intended** to ensure consistency
> between its preexisting Caller ID regulations and its
> revised TCPA regulations and/or the FTC's regulations
> pertaining to telemarketing when the FCC promulgated §
> 64.1601(e); those efforts all occurred at the same time, in
> 2003. Additionally, the FCC said, 'Caller ID requirements
> will improve the ability of consumers to identify and
> enforce do-not-call rights against telemarketers.' 68 Fed.
> Reg. at 44,156. **Therefore, the FCC's rule in § 64.1601(e)
> appears to support consumers' enforcement efforts
> under the TCPA's subsection c, rather than to create a**

> **separate mechanism upon which a consumer can make an actionable claim.**" [Emphasis added.]

*Worsham v Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D Md, September 2, 2016). However, the *Worsham* judge apparently failed to read beyond the subsection title of 47 U.S.C. § 227(d), as nowhere in subsection *d* is there <u>any</u> mention of caller identification. Subsection *d* expressly – and solely -- addresses technical and procedural standards for telephone facsimile machines and artificial or prerecorded voice systems.

Recently, a three judge panel on a state appellate court considered this same issue and unanimously determined that a private right of action does exist for violations of 47 C.F.R. § 64.1601(e). In *Worsham v. Life Station, Inc.*, the Court of Special Appeals of Maryland opined and very cogently and concisely explained:

> "[T]he first amended complaint alleges a violation of 47 C.F.R. § 64.1601(e)(1), an FCC regulation requiring that '[a]ny person or entity that engages in telemarketing, as defined in 47 C.F.R. § 64.1200(f)(10), must transmit' certain information via Caller ID. The circuit court ruled that Mr. Worsham could not bring a private cause of action for violation of this regulation, relying again on the **unreported decision** in *Travel Options,* which **rather hesitantly determined** that the regulation was promulgated under the authority of § 227(d), rather than § 227(c), of the TCPA. *Travel Options*, 2016 WL 4592373, at *7; see also *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 789-90 (E.D. Mich. 2020).
>
> Section 64.1601(e)(1) prohibits telemarketers from

24

appearing on telephone subscribers' Caller IDs as 'unknown' by requiring them to transmit certain Caller ID information, including the Calling Party Number ("CPN") or Automatic Numbering Information ("ANI"), and, if possible, the name of the telemarketer.

The regulation further provides that the information provided must be sufficient to 'permit any individual to make a do-not-call request during regular business hours.' 47 C.F.R. § 64.1601(e)(1). Thus, at an initial glance, § 64.1601(e)(1) contains aspects that seem to further the purposes of both § 227(c) and (d). We must therefore explore each further.

Section 227(c) authorizes the FCC to promulgate rules to protect telephone consumers' privacy rights and create rules that will allow consumers to 'avoid receiving telephone solicitations to which they object.' The FCC is directed to do so by 'compar[ing] and evaluat[ing] alternative methods and procedures (including ... telephone network technologies ...) for their effectiveness in protecting such privacy rights.' 47 U.S.C. § 227(c)(1)(A). Section 227(d), on the other hand, instructs the FCC to (1) revise its rules for telephone facsimile machines, requiring the use of machines that can mark the faxed pages with identifying information, (2) prescribe rules requiring automatic or prerecorded telemarketing messages to include the identity of the telemarketer at the beginning of the message and its telephone number or address during, or at the end, of the message, and (3) automatically release the called party's line within five seconds. Importantly, as discussed above, § 227(d) does not purport to regulate live telemarketing calls.

In adopting § 64.1601(e)(1), the FCC reasoned that 'Caller ID allows consumers to screen out unwanted calls and to identify companies that they wish to ask not to call again. Knowing the identity of the caller is also helpful to

consumers who feel frightened or threatened by hang-up and dead air calls.' 68 Fed. Reg. at 44,167. Additionally, Caller ID allows a consumer to 'make a do-not-call request during regular business hours,' § 64.1601(e)(1), further protecting the subscriber's privacy right by preventing future calls. Although the FCC's consideration of what network information must be transmitted via Caller ID is technical, we think it falls within the scope of the technologies that § 227(c)(1)(A) directed the FCC to consider in protecting the privacy rights of consumers. See 68 Fed. Reg. at 44,166-67 (evaluating the cost efficiency and availability of different network technologies for network transmission).

Although the question is not free from doubt and the lines between regulations authorized by § 227(c) and (d) (or, perhaps, some combination of both) could be far clearer, for two reasons, we conclude that **§ 64.1601(e)(1) was promulgated pursuant to § 227(c)** and, therefore, that **a private right of action exists to enforce its provisions**. First, to the extent the express terms of § 64.1601(e)(1) apply to live telemarketing calls, they would **exceed the scope of regulation authorized by § 227(d)**, but not the scope of § 227(c). Second, by requiring the provision of information expressly for the purpose of allowing individuals 'to make a do-not-call request,' the regulation serves the purpose of § 227(c) of 'protect[ing] subscribers from unrestricted commercial telemarketing calls.' 68 Fed. Reg. at 44,167." [Emphasis added.]

*Worsham v LifeStation, Inc.*, No. 661, Sept. 2020 Term, 2021 WL 5358876, at

*16–17 (Md. Ct. Spec. App., November 17, 2021).

Another court in this district has also taken note of the recent analysis from the

Court of Special Appeals of Maryland in *Worsham v. LifeStation, Inc.* which

concluded that given the purpose of § 64.1601(e) to protect a consumer's privacy rights, it falls under the scope and is promulgated under the section of the TCPA—§ 227(c)—which also considers the privacy rights of consumers and does include a private right of action.  See *Dobronski v. Symmetry Energy Solutions, LLC*, No. 22-cv-10599, Dkt. 26, PageID.218 (E.D. Mich. Aug. 2, 2022).

Accordingly, Plaintiff asserts that a private right of action does exist under 47 C.F.R. § 64.1601(e), and this Court should so hold.

## I.     Claim for Willfulness

Movants argue that the willfulness claims leading to treble damages (Counts I-X) should be dismissed because Plaintiff has not pleaded any facts demonstrating that he notified Defendants that he did not consent to the alleged calls. [ECF No. 41, PageID. 294].  Movants have the proverbial cart before the horse.

First, Plaintiff's telephone numbers are all listed on the National Do Not Call Registry and have been so listed continuously since at least January 1, 2005 and at all times relevant hereto. [ECF No. 1, PageID. 19-20, ¶ 49].  By listing his telephone numbers on the National Do Not Call Registry, Plaintiff has given notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his telephone numbers. [ECF No. 1, PageID.20].

27

Second, as pointed out *supra*, Movants failed to have instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of the person or entity in the first place before they initiated any call.

Third, the Complaint demonstrates multiple instances where Plaintiff alerted the caller that he did not wish to receive the telemarketing calls.

Fourth, the callers were required to provide accurate caller identification number information and "[t]he telephone number so provided must permit any individual to make a do-not-call request during regular business hours." 47 C.F.R. § 64.1601(e)(1).  As the Complaint repeatedly documents, the caller identification numbers supplied by the callers were deliberately falsified, thus thwarting Plaintiff's ability to make do-not-call requests.

## J.      Validity of Plaintiff's MTCCCA Claim (Count XI)

Movants argue that Plaintiff's MTCCCA claims should be dismissed. [ECF No. 41, PageID.295-297].  Curiously, Movants admit that Call Number 3 and 12 contained pre-recorded messages, "the rest of the calls must be dismissed." [ECF No. 41, PageID.296].

The MTCCCA violations can stem from two different violations.  Under M.C.L. § 484.125(2)(a), it is a violation to use a telephone line to "[d]eliver a recorded message for the purpose of presenting commercial advertising to the

28

subscriber... unless... the subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller, or the subscriber has knowingly and voluntarily provided his or her telephone number to the caller." Alternatively, under M.C.L. § 484.125(2)(b), it is a violation to "[d]eliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber."

First, as noted, Movants admit that Call Numbers 3 and 12 contained recorded messages. [ECF No. 1, PageID.296].  At no time has Plaintiff requested, consent, permitted, or authorized the contact from the Movants. [ECF No. 1, PageID.53].  At no time has Plaintiff provided his telephone number to the callers.  Indeed, as noted, Plaintiff's telephone numbers are all listed on the National Do Not Call Registry. [ECF No. 1, PageID.19, ¶ 49].

Second, throughout the Complaint, Plaintiff details how the callers deliberately manipulated the caller identification number information displayed such that a false number was shown on each call.  The callers were required to display a true and accurate caller identification number so that callers could make do-not-call requests. See 47 C.F.R. § 64.1601(e)(1); 16 C.F.R. § 310.4(a)(8).  Thus, the callers indeed "block[ed] the display of caller identification information that would otherwise be

29

available to the subscriber" on each call.

## K.   VALIDITY OF PLAINTIFF'S MHSSA CLAIM (COUNT XII)

Movants argue that Plaintiff's MHSSA "allegations were insufficient because the complaint included no factual basis for concluding that the individual defendant (*sic*) caused the calls to be made." [ECF No. 41, PageID.297].  Once again, Movants are off kilter.

A telephone solicitor can violate the MHSSA in one of several ways:

First, a person shall not make a telephone solicitation that consists in whole or in part of a recorded message.  M.C.L. § 445.111a(1).

Second, a telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal do-not-call list. M.C.L. § 445.111a(5).

Third, at the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. M.C.L. § 445.111b(1).

Fourth, a telephone solicitor shall not intentionally block or interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a

telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber. M.C.L. § 445.111b(3).

Fifth, a telephone solicitor shall not make a telephone solicitation to a consumer in this state who has requested that he or she not receive calls from the organization or other person on whose behalf the telephone solicitation is made. M.C.L. § 445.111c(5).

Each and every call alleged in the Complaint violates the MHSSA in one or more of the above-recited ways.

First, several of the alleged telephone calls consisted of recorded messages.

Second, in the case of all of the alleged telephone calls, Dobronski's telephone numbers are on the national do-not-call registry. Dobronski will further note that the MHSSA does not provide for any "prior express consent" exception similar to that which exists under the TCPA.

Third, in most of the alleged telephone calls, the caller identified with a bogus business name, and where telephone numbers were requested and provided the telephone numbers were found to be false.

Fourth, in the case of all of the alleged telephone calls, the caller identification number information was found to be manipulated such that a false number was

displayed.

Fifth, on more than one occasion, Dobronski expressly requested that he not receive further telephone calls, yet the telephone calls continued.  And, this, despite the fact that Dobronski's telephone number appeared on the national do-not-call registry.

## CONCLUSION

For the reasons set forth above, Dobronski respectfully requests that this Court enter its order **denying** the Movants' instant motion to dismiss the Complaint.

Respectfully submitted,

Date: November 17, 2022

_____
Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
(734) 330-9671
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## <u>CERTIFICATE OF SERVICE</u>

I, Mark W. Dobronski, certify that on **November 17, 2022**, I caused a copy of the foregoing *Plaintiff's Response in Opposition to Defendants Khonsavan Vongdara, Shannon Adams, Donte Grant, Vanessa Isabel Powell, and Dario Joseph Wickham's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* to be served by sending same in a sealed envelope, with first-class postage fully prepaid thereupon, and deposited in the United States Mail, addressed as follows:

D. Peter Valiotis, Esq.
Clark Hill
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435

John T. Mihelick, Esq.
Dinsmore & Shohl, LLP
900 Wilshire Drive, Suite 300
Troy, Michigan 48084-1600

Jennifer W. Weller, Esq.
Hinshaw & Culbertson, LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606-1915

Matthew J. Lund, Esq.
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075-1505

Alvin Lee, Esq.
King & Spalding, LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036-2603

Lewis Jan Friedman
921 Ormsby Street
Vista, California 92084-1436

_____
Mark W. Dobronski

33