## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

             Plaintiff,

v.

**FAMILY FIRST LIFE, LLC**, *et al.*

             Defendants.

Case No.  **2:22-cv-12039-DPH-JJCG**

Honorable Denise Page Hood
United States District Judge

Honorable Jonathan J.C. Grey
United States Magistrate Judge

_____

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GREAT WESTERN INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Plaintiff MARK W. DOBRONSKI, appearing *in propria persona*, hereby responds in opposition to Defendant Great Western Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(6) [ECF No. 105].

Plaintiff relies upon the points and authorities set forth in its appurtenant brief.

WHEREFORE, for the reasons set forth herein and in the appurtenant brief, Plaintiff respectfully urges that the Court should either strike or deny Defendant Great Western Insurance Company's motion to dismiss.

Respectfully submitted,

Date: April 3, 2023

_____

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

Case No.  **2:22-cv-12039-DPH-JJCG**

       Plaintiff,

Honorable Denise Page Hood
United States District Judge

v.

Honorable Jonathan J.C. Grey
United States Magistrate Judge

**FAMILY FIRST LIFE, LLC**, *et al.*

       Defendants.

_____

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT GREAT WESTERN INSURANCE COMPANY'S
## <u>MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)</u>

## ISSUES PRESENTED

1.  Should Defendant's motion be stricken or denied as a result of Defendant's failure to comply with the mandatory "meet and confer" requirements of E.D. Mich. LR 7.1(a)?

2.  Whether Plaintiff's First Amended Complaint provides GWIC with fair notice of the claims against it?

3.  Whether Plaintiff's First Amended Complaint has stated a cause of action upon which relief can be granted under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*?

4.  Whether Plaintiff's First Amended Complaint has stated a cause of action upon which relief can be granted under the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*?

5.  Whether Plaintiff's First Amended Complaint has stated a cause of action upon which relief can be granted under the Michigan Home Sales Soliciation Act ("MHSSA"), M.C.L. § 445.101, *et seq.*?

6.  Whether Plaintiff's First Amended Complaint adequately alleges a willful violation of the TCPA?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*AIG Aviation, Inc. v. Boorom Aircraft, Inc.*, 142 F.3d 431 (6th Cir. 1998)

*Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir.1992)

*Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 674, 577 U.S. 153, 168 (2016)

*El Camino Resources, Ltd. v. Huntington Nat. Bank*, 722 F.Supp.2d 875, 901 (W.D.Mich., 2010)

*Siding and Insulation Co. v. Combined Ins. Group, Ltd., Inc.*, 2014 WL 1577465, at *4 (N.D.Ohio, 2014)

*U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich., 2009)

*Worsham v. LifeStation, Inc.*, No. 661, Sept. 2020 Term, 2021 WL 5358876, at *16–17 (Md. Ct. Spec. App., 2021)

*In the Matter of Dish Network*, LLC, 28 FCC Rcd, 6574, 2013 WL 1934349 (2013)

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144 (2003)

47 U.S.C. § 312(f)

47 C.F.R. § 64.1601(e)

Fed. R. Civ. P. 8

Fed R. Civ. P. 12(b)(6)

E.D. Mich. LR 7.1(a)

3

## INTRODUCTION

Plaintiff Mark W. Dobronski commenced the instant case on August 31, 2022 against Defendant Family First Life, LLC ("FFL"), three of its insurance companies, and several of its independent insurance agents stemming from violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and related state consumer protection laws. A First Amended Complaint ("FAC") was filed on February 22, 2023 [ECF No. 99].  Defendant Great Western Insurance Company ("GWIC") is one of the three named insurance companies.

In the FAC, Plaintiff alleges to having received over 56 telephone solicitations hawking insurance products. [ECF No. 99, PageID.1023-1059, ¶¶ 102-349].

GWIC now comes before the Court and argues that it cannot be held liable for the telephone solicitations received by Plaintiff, as "Plaintiff does not allege that GWIC made a single call to him." [ECF No. 105, PageID.1112].

## NON-COMPLIANCE WITH E.D. MICH. LR 7.1(a)

E.D. Mich. LR 7.1(a) promulgates:

> "Before filing a motion relating to discovery, the movant must comply with Federal Rule of Civil Procedure 37(a)(1). Otherwise, the movant must ascertain before filing whether the contemplated motion or request under Federal Rule of Civil Procedure 6(b)(1)(A) will be opposed. To accomplish this, the movant must confer with the other parties and other persons entitled to be heard on the motion in good faith and in a manner that reasonably explains the basis for the motion and allows for an

interactive process aimed at reaching agreement on the matter or those aspects of the matter that can be resolved without court intervention, given the nature of the contemplated motion. The conference must be held sufficiently in advance of filing the motion to allow a good faith interactive exchange aimed at resolving the matter. If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order... If concurrence is not obtained, the motion or request must state... there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought...." [E.D. Mich. LR 7.1(a)].

The commentary to LR 7.1 goes on to state:

"LR 7.1(a) requires that a moving party conduct a meaningful and timely conference with other parties to explain the nature of the relief sought and the grounds for the motion, to seek concurrence, and to narrow the issues. The Court's strong preference is for conferences held in a manner that facilitates discussion and debate, such as in person, by video or by telephone. Sometimes, email exchanges may suffice if the motion is rudimentary and uncomplicated, or to document conversations. **But sending an email without engaging the other parties will not satisfy this rule.**" [Emphasis added.]

In this instance, Defendant GWIC's attorney, Jennifer W. Weller, sent an email to Plaintiff late in the afternoon on March 8, 2023. Plaintiff was on a family vacation from March 8, 2023 through March 19, 2023. To GWIC's counsel's credit, she did

2

attempt to telephone Plaintiff on March 10, 2023, but at the time of the incoming call (1:00 P.M. in Phoenix, 3:00 P.M. in Detroit), Plaintiff was going through Transportation Security Agency ("TSA") screening at Phoenix (Arizona) Sky Harbor Airport and was directed by the TSA officers to turn off his cell phone.  Plaintiff did try to contact GWIC's counsel approximately 30 minutes later before boarding a 4-hour flight, without success. Defendant GWIC apparently filed its motion sometime shortly thereafter, and without any discussion.

Sadly, Plaintiff has all too often observed that opposing attorneys simply want to send an email and promptly file their prospective motion without any discussion. Plaintiff reads LR 7.1(a) for what it expressly states: that the parties are required to "conference" regarding a prospective motion, and that an email does not meet the requirement.  Leastwise, when Plaintiff has had motions to file, Plaintiff has always picked up the telephone and spoken (or attempted to speak) with the opposing attorney.

In Plaintiff's real time experience, more often than not, the opposing counsel sends an email late in the evening and files the motion the following morning. This simply does not appear to be compliance with the requirements of Rule 7.1. And, after receiving such an email, where Plaintiff has then tried to reach out to opposing counsel to discuss their to-be-filed motion, Plaintiff is unable to get beyond the voice

mail of opposing counsel; ultimately the motion gets filed.

Plaintiff commends GWIC's counsel because she is one of few opposing attorneys who has *actually* attempted telephone communication with Plaintiff to discuss an impending motion. However, in the case of the instant motion, GWIC's counsel knew for *weeks* that she intended to file a motion to dismiss, but she waited until the day before the deadline to even attempt to reach out (via email) to Plaintiff to "discuss" the motion, which is contrary to the requirement that the "[t]he conference must be held sufficiently in advance of filing the motion to allow a good faith interactive exchange aimed at resolving the matter." Plaintiff believes that several of the issues raised in GWIC's motion to dismiss could have been resolved with a "conference."

It is not up to the Court to expend its energies when the parties have not sufficiently expended their own. *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996). Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District; inasmuch as defendant has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that defendant seeks to obtain. *U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009). The Local Rules, as well as the Federal Rules of Civil Procedure, are called "rules," not "suggestions" or "guidelines," and as Justice (then Judge) Charles Levin stated in

*People v. Farrar*, 36 Mich.App. 294, 299 193 N.W.2d 363, 366 (1971), "Unless we enforce the rules we encourage their violation...." *Bryce v. Commissioner of Social Security*, 2013 WL 12123666, at *1 (E.D. Mich. 2013).

For these reasons alone, the Court should strike Defendants' motion.

## LEGAL STANDARD

In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation and citation omitted); *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir.2002). A plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In analyzing a 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). However, the court does not have to accept as true "unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem*

*Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). The burden of demonstrating that the complaint fails to adequately state a claim falls on the defendant. *Taylor*, 922 F.3d at 331. However, ordinarily "if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if she can, to show the existence of the missing elements." *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764, 768 (6th Cir. 2015).

## ARGUMENT

### Liability of GWIC

Throughout its motion, GWIC appears to be fixated on the theme that nowhere does Plaintiff "specifically identify GWIC as an entity that physically made any of the calls alleged." [ECF No.105, PageID.1121]. But, GWIC does not have to be the person or entity that initiated the offensive telemarketing calls to be held liable under the TCPA. A defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. *Gomez v. Campbell-Ewald Co.,* 768 F.3d 871, 879 (C.A.9 2014). Under federal common-law principles of agency, there is vicarious liability for TCPA violations. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct.

663, 674, 577 U.S. 153, 168 (2016) citing *In re Joint Petition Filed by Dish Network*,

LLC, 28 FCC Rcd. 6574 (2013). The FAC clearly recites to this vicarious liability.

[ECF No. 99, PageID.1013, ¶ 60].

Congress has delegated to the Federal Communications Commission ("FCC")

the authority to promulgate regulations and enforce the requirements of the TCPA.

See 47 U.S.C. § 227. The FCC has issued an extensive declaratory ruling on the issue

of party liability under the TCPA, holding as follows:

> "[W]hile a seller does not generally initiate calls made
> through a third-party telemarketer, it nonetheless may be
> vicariously liable under federal common law
> agency-related principles for violations of either section
> 227(b) or 227(c) committed by telemarketers that initiate
> calls to market its products or services."

*In the Matter of Dish Network*, LLC, 28 FCC Rcd, 6574, 6593, 2013 WL 1934349,

at *15, ¶ 48 (2013). The FCC provided the following reasoned explanation:

> "[T]he seller is in the best position to monitor and police
> TCPA compliance by third-party telemarketers. We thus
> agree that, consistent with the statute's consumer protection
> goals, potential seller liability will give the seller
> appropriate incentives to ensure that their telemarketers
> comply with our rules. By contrast, allowing the seller to
> avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for
> telemarketing intrusions. This would particularly be so if
> the telemarketers were judgment proof, unidentifiable, or
> located outside the United States, as is often the case. Even

7

> where third-party telemarketers are identifiable, solvent,
> and amenable to judgment, limiting liability to the
> telemarketer that physically places the call would make
> enforcement in many cases substantially more expensive
> and less efficient, since consumers (or law enforcement
> agencies) would be required to sue each marketer
> separately in order to obtain effective relief."

*Id.*, 28 FCC Rcd. at 6593, 2013 WL 1934349, at *15, ¶ 47 (2013). The FCC further

opined that imposing seller liability serves to ensure that "sellers will have an

incentive to carefully choose their telemarketers to ensure compliance and to force

consistent violators out of the marketplace." *Id.*, 28 FCC Rcd. at 6591, 2013 WL

1934349, at *14, ¶ 44 (2013).

In another case involving an insurance company and its independent agents

making telephone solicitations, the FCC reiterated that the insurance company faced

vicarious liability for the telemarketing done by its independent agents, as follows:

> "[A] company on whose behalf a telephone solicitation is
> made bears the responsibility for any violation of our
> telemarketing rules and calls placed by a third party on
> behalf of that company are treated as if the company itself
> placed the call."

*In re State Farm Mutual Automobile Insurance Company*, 20 FCC Rcd. 13664,

13667, 2005 WL 1981564, at *3, ¶ 7 (2005).

Michigan law holds defendants liable for all foreseeable acts of the other

tortfeasor. "Conspiracy, by reason of the connection involved among the conspirators,

may cause individuals to be responsible, who, but for the conspiracy, would not be responsible at all." *Roche v. Blair*, 305 Mich. 608, 9 N.W.2d 861, 863 (1943) (quoting *Bush v. Sprague*, 51 Mich. 41, 16 N.W. 222, 225 (1883)). Likewise, if two persons act in concert with a common design or purpose and one of them commits a wrongful act injuring a third party, the person acting in concert with the wrongdoer is liable for the injury under a concert of action theory. *Gaufin v. Valind*, 268 Mich. 269, 256 N.W. 335, 336 (1934). "Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts." *El Camino Resources, Ltd. v. Huntington Nat. Bank*, 722 F.Supp.2d 875, 901 (W.D.Mich., 2010).  In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

The FCC has determined that vicarious liability in the TCPA context is governed by the federal common law of agency. See *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). Three agency theories may support vicarious liability: actual authority, apparent authority, and ratification. See *Thomas*

*v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). The existence of an agency relationship is generally a question of fact. See *Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988). At the motion to dismiss stage, a plaintiff need only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sept. 7, 2016).

The FAC alleges a scheme amongst the co-defendants to engage in telephone solicitation *en masse* to consumers to market the insurance products of the named insurance companies. [ECF No. 99, PageID.1016-1023, ¶¶ 68-101]. A prevailing common denominator amongst the telephone solicitations was that the telemarketers identified themselves as being agents for FFL. [ECF No. 99, PageID.1030, ¶ 147; PageID.1031, ¶ 153; PageID.1032, ¶ 159; PageID.1033, ¶ 166; PageID.1034, ¶ 174; PageID.1035, ¶ 179; PageID.1036, ¶ 192; PageID.1038, ¶ 203; PageID.1045, ¶ 250; PageID.1051, ¶ 293; PageID.1055, ¶ 325]. Several of the insurance agents represented that they are authorized agents of GWIC. [ECF No. 99, PageID.996, ¶¶ 8-9; PageID.998, ¶¶ 17-18]. As a result of one of the calls, Plaintiff received a whole life insurance policy from GWIC via U.S. Mail. [ECF No. 99, PageID.1037, ¶ 196]. A copy of significant pages from the mailed insurance policy are attached hereto at

10

EXHIBIT A.

In the instant case, we have an actionable tort in the form of the initiation of the telephone solicitation that is illegal under the TCPA. [ECF No. 99, PageID.1035, ¶ 182].  We have a purported insurance agent who represents that he is licensed to sell GWIC insurance products and quotes prices for same; therefore, there is either actual authority or apparent authority. [ECF No. 99, PageID.1036, ¶ 189].  And, as a result of the insurance agent's telephone solicitation, GWIC issued Plaintiff a whole life insurance policy – which evidences ratification. [ECF No. 99, PageID.1037, ¶ 196]. The fact that GWIC issued the insurance policy also provides evidentiary support that the insurance agent had either actual or apparent authority from GWIC.

The liability of coconspirators to civil damages is joint and several. *AIG Aviation, Inc. v. Boorom Aircraft, Inc.*, 142 F.3d 431 (6th Cir. 1998).  All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him. *Rosenberg v. Rosenberg Bros. Special Account*, 351 N.W.2d 563, 569, 134 Mich.App. 342, 354 (Mich.App., 1984).

### Federal Rules of Civil Procedure, Rule 8

Fed. R. Civ. P. 8 establishes a system of notice pleading.   Complaints are

11

construed favorably to their drafters. *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963 (C.A.7 (Ill.),1992). A complaint need not narrate all relevant facts or recite the law; all it has to do is set out a claim for relief. *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir.1992); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986). Over and over, appellate courts insist that a complaint not be dismissed unless no relief may be granted "under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (emphasis added); see also, *e.g.*, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Rule 8(a)(1) of the Federal Rules of Civil Procedure is to be liberally construed. *Barnes v. Irving Trust Co.*, 290 F.Supp. 116, 117 (D.C.Tex. 1968). The judicial history of Rule 8 requires the Court to interpret the pleadings so that common sense and the ends of justice are not circumvented. *Powers v. Troy Mills, Inc.*, 303 F.Supp. 1377, 1379 (D.C.N.H. 1969).

In the FAC, Plaintiff has sufficiently pled the liability of GWIC. Because "[i]dentifying the objectives and even the participants of an unlawful agreement is often difficult because of the clandestine nature of criminal conspiracies[,] ... direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *Bell v. Woods*, 2014 WL 11206412,

at *11 (E.D.Mich., 2014).  The FCC also recognized the clandestine nature of arrangements between sellers and third-party marketers and the difficulties that presents at the pleading stage in a TCPA case:

> "In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof — at the time it files its complaint — that the seller should be held vicariously liable for the offending call."

*In the Matter of Dish Network, LLC*, 28 FCC Rcd, 6574, 6593, 2013 WL 1934349, at *15, ¶ 47 (2013).

### Plaintiff has alleged plausible TCPA claims against GWIC.

### Direct Liability.

Plaintiff concurs that Plaintiff has not plead a direct liability theory against TCPA.

### Vicarious Liability.

Plaintiff has demonstrated, *supra*, that Defendant GWIC's vicarious liability is plausibly alleged in the FAC.  As shown, *supra*, the FAC alleges an actionable tort stemming from an unlawful telephone solicitation, the insurance agent had either actual or apparent authority to market GWIC products, and GWIC ratified that conduct by issuing a whole life insurance policy.  This was part of a concert in action

13

between the various co-defendants. GWIC attempts to defend by claiming that Plaintiff "does not demonstrate that the calls at issue were placed under GWIC's knowledge, direction or control." [EC No. 105, PageID.1126]. However, the FCC has declared that the TCPA requires that GWIC " monitor and police TCPA compliance by [its] third-party telemarketers." *In the Matter of Dish Network, LLC*, 28 FCC Rcd. at 6593, 2013 WL 1934349, at *15, ¶ 47 (2013). And, it bears repeating that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *In re State Farm Mutual Automobile Insurance Company*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564, at *3, ¶ 7 (2005).

### Private of action under 47 C.F.R. § 64.1601(e)(1).

GWIC recites to three cases in the United States District Court for the Eastern District of Michigan wherein this same Plaintiff has been previously unsuccessful in arguing that there is a private right of action for violations of 47 C.F.R. § 64.1601(e). All three decisions (*Dobronski v. Total Insurance Brokers,* LLC, No. 21-10035, 2021 WL 4338957, at *7 (E.D. Mich. May 14, 4021); *Dobronski v. SunPath Ltd*., No. 19-13094, 2020 WL 8840311, at *7 (E.D. Mich July 20, 2020); and, *Dobronski v. Selectquote Insurance Services*, 462 F. Supp. 3d 784 790 (E.D. Mich. 2020))

14

expressly relied upon the finding in an unpublished case -- *Worsham v. Travel Options, Inc.*, No. JKB-14-2749 2016 WL 4592372, at *7 (D. Md. September 2, 2016) – as being "persuasive". The fact remains that none of the above-recited decisions are binding precedent upon any court, and certainly not this Court.

47 C.F.R. § 64.1601(e) was adopted by the FCC in 2003. See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144 (July 25, 2003) ("Final Rule"). The FCC expressly recites in the Final Rule that it has adopted the regulations set forth therein, including the newly promulgated § 64.1601(e), pursuant to the authority of 47 U.S.C. § 227 and the Do-Not-Call Implementation Act, Public Law 108-10, 117 Stat. 557. The entirety of the Final Rule addresses the regulatory requirements promulgated by Congress under the various sub-subsections of 47 U.S.C. § 227(c). The TCPA requires the FCC "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). In so doing, 47 U.S.C. § 227(c)(1)(a) directs the Commission to "compare and evaluate alternative methods and procedures" including the use of electronic databases and other alternatives in protecting such privacy rights. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144-01 (FCC July 25, 2003).

In its summary of the Final Rule, the FCC states:

> "In this document, we revise the current Telephone Consumer Protection Act of 1991 (TCPA) rules, and adopt new rules to **provide consumers with several options for avoiding unwanted telephone solicitations**. These new rules establish a national do-not-call registry, set a maximum rate on the number of abandoned calls, **require telemarketers to transmit caller ID information**, and modify the Commission's unsolicited facsimile advertising requirements." [Emphasis added.]

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144 (July 25, 2003). Clearly, the requirement for caller identification is an alternative method or procedure in protecting such privacy rights. This leads to the reasonable conclusion that the FCC was acting within its delegated authority under 47 U.S.C. § 227(c) when it promulgated § 64.1601(e).

In *Worsham v. Travel Options, Inc.*, the judge was clearly having some difficulty in determining under which subsection of 47 U.S.C. § 227 the subject regulation – 47 C.F.R. § 64.1601(e) – was adopted and explained his quandry, as follows:

> "In recognition of the role played by Caller ID in helping consumers avoid unwanted calls, and in conjunction with other amendments to its TCPA regulations in § 64.1200 et seq., the FCC specifically amended this set of regulations in 2003 by adding § 64.1601(e), which requires telemarketers to transmit caller identification information, including either calling party number ("CPN") or automatic number identification of the calling party's billing number ("ANI") and, when available by the telemarketer's carrier,

16

the telemarketer's name; this regulation also prohibited telemarketers from blocking the transmission of caller identification information. Rules and Regulations Implementing...(TCPA), 68 Fed. Reg. at 44,179. **However, it is not clear whether § 64.1601(e) is promulgated under either subsection b or subsection c of the TCPA**. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. **Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection b or subsection c.** It seems just as likely that **the FCC may have only intended** to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e); those efforts all occurred at the same time, in 2003. Additionally, the FCC said, 'Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers.' 68 Fed. Reg. at 44,156. **Therefore, the FCC's rule in § 64.1601(e) appears to support consumers' enforcement efforts under the TCPA's subsection c, rather than to create a separate mechanism upon which a consumer can make an actionable claim.**" [Emphasis added.]

*Worsham v Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D Md, September 2, 2016).  However, the *Travel Options* judge apparently failed to read beyond the subsection title of 47 U.S.C. § 227(d), as nowhere in subsection *d* is there <u>any</u> mention of caller identification.  Subsection *d* expressly – and solely -- addresses technical and procedural standards for telephone facsimile machines and artificial or prerecorded voice systems.

17

Recently, a three judge panel on a state appellate court considered this same issue and unanimously determined that a private right of action does exist for violations of 47 C.F.R. § 64.1601(e).  In *Worsham v. Life Station, Inc.*, the Court of Special Appeals of Maryland opined and very cogently and concisely explained:

> "[T]he first amended complaint alleges a violation of 47 C.F.R. § 64.1601(e)(1), an FCC regulation requiring that '[a]ny person or entity that engages in telemarketing, as defined in 47 C.F.R. § 64.1200(f)(10), must transmit' certain information via Caller ID. The circuit court ruled that Mr. Worsham could not bring a private cause of action for violation of this regulation, relying again on the **unreported decision** in *Travel Options,* which **rather hesitantly determined** that the regulation was promulgated under the authority of § 227(d), rather than § 227(c), of the TCPA. *Travel Options*, 2016 WL 4592373, at *7; see also *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 789-90 (E.D. Mich. 2020).
>
> Section 64.1601(e)(1) prohibits telemarketers from appearing on telephone subscribers' Caller IDs as 'unknown' by requiring them to transmit certain Caller ID information, including the Calling Party Number ("CPN") or Automatic Numbering Information ("ANI"), and, if possible, the name of the telemarketer.
>
> The regulation further provides that the information provided must be sufficient to 'permit any individual to make a do-not-call request during regular business hours.' 47 C.F.R. § 64.1601(e)(1). Thus, at an initial glance, § 64.1601(e)(1) contains aspects that seem to further the purposes of both § 227(c) and (d). We must therefore explore each further.

Section 227(c) authorizes the FCC to promulgate rules to protect telephone consumers' privacy rights and create rules that will allow consumers to 'avoid receiving telephone solicitations to which they object.' The FCC is directed to do so by 'compar[ing] and evaluat[ing] alternative methods and procedures (including ... telephone network technologies ...) for their effectiveness in protecting such privacy rights.' 47 U.S.C. § 227(c)(1)(A). Section 227(d), on the other hand, instructs the FCC to (1) revise its rules for telephone facsimile machines, requiring the use of machines that can mark the faxed pages with identifying information, (2) prescribe rules requiring automatic or prerecorded telemarketing messages to include the identity of the telemarketer at the beginning of the message and its telephone number or address during, or at the end, of the message, and (3) automatically release the called party's line within five seconds. Importantly, as discussed above, § 227(d) does not purport to regulate live telemarketing calls.

In adopting § 64.1601(e)(1), the FCC reasoned that 'Caller ID allows consumers to screen out unwanted calls and to identify companies that they wish to ask not to call again. Knowing the identity of the caller is also helpful to consumers who feel frightened or threatened by hang-up and dead air calls.' 68 Fed. Reg. at 44,167. Additionally, Caller ID allows a consumer to 'make a do-not-call request during regular business hours,' § 64.1601(e)(1), further protecting the subscriber's privacy right by preventing future calls. Although the FCC's consideration of what network information must be transmitted via Caller ID is technical, we think it falls within the scope of the technologies that § 227(c)(1)(A) directed the FCC to consider in protecting the privacy rights of consumers. See 68 Fed. Reg. at 44,166-67 (evaluating the cost efficiency and availability of different network technologies for network transmission).

19

> Although the question is not free from doubt and the lines between regulations authorized by § 227(c) and (d) (or, perhaps, some combination of both) could be far clearer, for two reasons, we conclude that **§ 64.1601(e)(1) was promulgated pursuant to § 227(c)** and, therefore, that **a private right of action exists to enforce its provisions**. First, to the extent the express terms of § 64.1601(e)(1) apply to live telemarketing calls, they would **exceed the scope of regulation authorized by § 227(d)**, but not the scope of § 227(c). Second, by requiring the provision of information expressly for the purpose of allowing individuals 'to make a do-not-call request,' the regulation serves the purpose of § 227(c) of 'protect[ing] subscribers from unrestricted commercial telemarketing calls.' 68 Fed. Reg. at 44,167." [Emphasis added.]

*Worsham v. LifeStation, Inc.*, No. 661, Sept. 2020 Term, 2021 WL 5358876, at *16–17 (Md. Ct. Spec. App., November 17, 2021).

Accordingly, consistent with the reasoning set forth in *Worsham v. LifeStation, Inc.*, Plaintiff asserts that a private right of action does exist under 47 C.F.R. § 64.1601(e), and this Court should so hold.

**MTCCCA Claim (Count XII)**

Once again, GWIC wants to gloss past the fact that it has vicarious liability for the telemarketing calls as part of the concert of action. Further, GWIC attempts to claim that there was no attempt to deliver "intrastate commercial advertising" because "Plaintiff contends that GWIC is an Iowa corporation and he contends the alleged calls he received originated overseas." [ECF No.105, PageID.11278]. GWIC glosses

20

past the fact that most of the initiated telephone solicitations displayed caller identification numbers with a Michigan area code and were received by Plaintiff's cellular telephone which has a Michigan area code and Plaintiff was in Michigan when the calls were received; thus, the calls, plausibly, were *intrastate* telephone solicitations.

### MHSSA Claim (Count XIII)

Like the MTCCCA claim, *supra*, GWIC glosses past the fact that it has vicarious liability for the telephone calls.

### GWIC willfully violated the TCPA

As discussed, *supra*, there is joint liability in a civil conspiracy or concert of action tort.   GWIC jointly shares in the liability with the other co-defendant tortfeasors.  Plaintiff's telephone numbers were listed on the National Do Not Call Registry. [ECF No. 99, PageID.1011-1012, ¶¶ 51-52].  By listing his numbers on the National Do Not Call Registry, Plaintiff has given notice to the World that he does not wish to receive telephone solicitations at his residential or cellular telephone numbers. [ECF No. 99, PageID.1012, ¶ 53].  Defendant even went further and made specific "do not call" demands during calls.  [ECF No. 99, PageID.1035, ¶ 180; PageID.1058, ¶ 344].

The fact that the caller identification numbers in almost, if not all, of the

telephone calls had been manipulated to display false numbers took a deliberate and overt act to manipulate the telephone network, and evidences a "willful and knowing" violation of the TCPA.   [ECF No.99, PageID.1067, ¶ 386]. See 47 C.F.R. § 64.1601(e).   And, this regardless of whether there is a private right of action for a violation of that regulation.  The "willful" nature of the other claims is evidenced by the repetitiveness and cannot be glossed over as an innocent mistake.  Willful means "conscious and deliberate commission or omission ... irrespective of any intent to violate [ ]." 47 U.S.C. § 312(f). *Siding and Insulation Co. v. Combined Ins. Group, Ltd., Inc.*, 2014 WL 1577465, at *4 (N.D.Ohio,2014). The FCC has imposed monetary forfeitures against licensees when their actions were "indisputably willful and patently inconsistent with the plain language" of the applicable regulations, even if they "may not have set out with the specific intention of violating" an FCC rule. *U.S. v. Baxter*, 841 F.Supp.2d 378, 393 (D.Me., 2012).

## CONCLUSION

WHEREFORE, Plaintiff Mark W. Dobronski respectfully requests that this Court enter its order that Defendant Great Western Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(6) be **denied**.

22

Respectfully submitted,

Date: April 3, 2023

_____

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

23

## CERTIFICATE OF SERVICE

I, Mark W. Dobronski, certify that on **April 3, 2023**, I caused a copy of the foregoing *Plaintiff's Response in Opposition to Defendant Great Western Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(6)* to be served upon all parties of record by sending same in a sealed envelope, with first-class postage fully prepaid thereupon, and deposited in the United States Mail, addressed as follows:

D. Peter Valiotis, Esq.
Clark Hill
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435

John T. Mihelick, Esq.
Dinsmore & Shohl, LLP
900 Wilshire Drive, Suite 300
Troy, Michigan 48084-1600

Jennifer W. Weller, Esq.
Hinshaw & Culbertson, LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606-1915

Matthew J. Lund, Esq.
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075-1505

Alvin Lee, Esq.
King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036-2603

Lewis Jan Friedman
921 Ormsby Street
Vista, California 92084-1436

_____
Mark W. Dobronski

# EXHIBIT A

**GWIC** **GREAT WESTERN**
INSURANCE COMPANY
P.O. Box 14410, Des Moines, IA 50306-3410

Policy/Certificate Number: 00GWF0079850          June 24, 2022
Coverage type: Limited Ben Final Expense

Dear Mark W Dobronski,

Welcome to Great Western Insurance Company! Thank you for choosing us for your insurance needs.

Included in this packet you will find your new policy. Please take a few minutes to review and complete the following:

- Review the policy and application for accuracy.
- Check the effective date shown on the policy schedule page.
- Notify us as soon as possible if any information has changed or is incorrect.
- If you are replacing existing coverage with this policy, you will need to notify the previous insurance company to terminate existing coverage.
- Premiums will be paid monthly by automatic credit card payment and your card will be charged on the 3rd of the month when the premium is due.
- File this policy with your important documents and inform a family member or the person responsible for your final arrangements of this policy and where it is located.

If you have any questions about your coverage, you can visit our customer portal on our website, www.gwic.com, and click on "Member Login" on the top right side of the page. After you register for an online account, you will be able to access policy information, download forms, check claim status, and enroll in automatic payments through your bank account. You may also call our Customer Care Center at 800-733-5454, Monday through Friday, from 7:30 a.m. to 5 p.m. Central time.

Thank you again for entrusting us with your insurance needs. We appreciate your business.

Sincerely,

Thomas A. Swank, President

LM2730 (09-17)

R581460-2/3-00057

GREAT WESTERN INSURANCE COMPANY
P.O. Box 14410, Des Moines, IA 50306-3410
For Inquiries Call Toll-Free 800-733-5454
WHOLE LIFE INSURANCE POLICY

## POLICY DATA

Policy Number:   00GWF0079850

Covered Person:   MARK W DOBRONSKI

Owner:   MARK W DOBRONSKI

Age Last Birthday:  67

Policy Date:  July 03, 2022                     Sex:  Male

Loan Interest Rate:  8%                 Premium Class:  Non-tobacco

Face Amount: $5,000        Maturity or Expiration Date:  July 03, 2075

### Schedule of Benefits and Premiums

| Form | Death Benefit | Annual Premium |
|------|--------------|----------------|
| ICC21-FE-LB, Whole Life Insurance Policy | $5,000 | $399.45 |
| ICC15-ACCEL-1219, Accelerated Death Benefit Rider | See Rider | Included |

Optional Benefit Riders
| | | |
|---|---|---|
| ICC21-ADBR, Accidental Death Benefit Rider | $5,000 | $15.00 |

| | Annual | Semi-Annual | Quarterly | Monthly | Years Payable |
|---|---|---|---|---|---|
| Total Premium | $414.45 | $215.51 | $109.83 | $37.30 | 53 |

Annual Policy Fee of $40 is included in the premiums shown above.

Regulated by the Michigan Department of Insurance and Financial Services 1-877-999-6442

Whole Life Insurance Policy
Premiums Payable for Life of Insured Specified on Page Three
Non-Participating

ICC21-FE-LB                            3

GREAT WESTERN INSURANCE COMPANY
STATEMENT OF COST AND BENEFIT INFORMATION

| YEAR | ANNUAL PREMIUM | GUARANTEED DEATH BENEFIT | GUARANTEED CASH VALUE |
|---|---|---|---|
| 1 | $414.45 | $5,000 | $0 |
| 2 | $414.45 | $5,000 | $35 |
| 3 | $414.45 | $5,000 | $205 |
| 4 | $414.45 | $5,000 | $377 |
| 5 | $414.45 | $5,000 | $551 |
| 6 | $414.45 | $5,000 | $724 |
| 7 | $414.45 | $5,000 | $898 |
| 8 | $414.45 | $5,000 | $1,071 |
| 9 | $414.45 | $5,000 | $1,243 |
| 10 | $414.45 | $5,000 | $1,415 |
| 11 | $414.45 | $5,000 | $1,585 |
| 12 | $414.45 | $5,000 | $1,755 |
| 13 | $414.45 | $5,000 | $1,923 |
| 14 | $414.45 | $5,000 | $2,089 |
| 15 | $414.45 | $5,000 | $2,252 |
| 16 | $414.45 | $5,000 | $2,411 |
| 17 | $414.45 | $5,000 | $2,566 |
| 18 | $414.45 | $5,000 | $2,715 |
| 19 | $414.45 | $5,000 | $2,857 |
| 20 | $414.45 | $5,000 | $2,991 |
| AGE 60 | | | |
| AGE 65 | | | |

Benefit Disclosure:
- Whole Life Insurance.
- Cash Values are as of the end of the Policy year.


LIFE INSURANCE COST INDEX:   Life Insurance Cost Indexes are not applicable to this Policy.

FOOTNOTES:
1. For inquiries regarding this Policy summary please contact:

The Company's Home Office          or Your Agent
Great Western Insurance Company    KHONSAVAN VONGDARA
P.O. Box 14410                     339 SUMMER SPRINGS CT
Des Moines, IA 50306               JACKSONVILLE, FL 32225-4187
                                   904-314-0742


2. The maximum Policy loan interest rate is 8% charged in arrears.
3. This Policy is non-participating.
4. Covered Person:  MARK W DOBRONSKI



| Policy Number: | 00GWF0079850 | Date Prepared: | June 24, 2022 |
|---|---|---|---|
| Policy Form: | ICC21-FE-LB | Age Last Birthday: | 67 |
| Plan Code: | FEL5 | | |
| Agency: | BLAKE HUNTER SCHEIFELE | | |

# GWIC GREAT WESTERN
### INSURANCE COMPANY

P.O. Box 14410 Des Moines, IA 50306-3410
Fax: 515-247-2500 • Phone: 800-733-5454
Email: FENEW@GWIC.COM • Website: www.gwic.com

## Application for Individual Life Insurance

Upon approval of this application, the policy will be delivered to:
☑ Insured   ☐ Owner   ☐ Agent

### Part A: Proposed insured (Full legal name)

| Mark | W | Dobronski | 04/11/1955 | Male |
|------|---|-----------|------------|------|

Full name of applicant: *first, middle, last, suffix* | Date of birth (MM/DD/YYYY) | Gender

Address (include Apt/Bldg/Unit Nbr if applicable) | City | State | ZIP code

crabaisri@gmail.com

Phone number    Mobile phone number    Email address            Social Security number

Have you used tobacco in any form, electronic cigarettes, or other nicotine products in the past 12 months? ☐ Yes ☑ No

### Part B: Owner (Complete only if other than proposed insured)

Full name of owner: *first, middle, last, suffix* | Date of birth (MM/DD/YYYY) | Gender

Address (include Apt/Bldg/Unit Nbr if applicable) | City | State | ZIP code

Phone number    Email address    Relationship to insured    Social Security number

### Part C: Medical information

For purposes of these questions, "you" means the proposed insured.

1. Are you currently or have you been advised in the past **3 months** by a licensed member of the medical profession to be hospitalized, confined to a nursing facility, receiving home health care, or in hospice? ☐ Yes ☑ No

2. Do you require assistance from anyone with the following activities of daily living: taking medications, bathing, dressing, eating, toileting, transferring from a chair or bed, moving about, or are you confined to a bed? ☐ Yes ☑ No

3. Do you require use of an electric scooter or are you confined to a wheelchair as advised by a licensed member of the medical profession due to a chronic medical condition or illness? ☐ Yes ☑ No

4. Do you require the use of oxygen or oxygen equipment to assist with breathing? ☐ Yes ☑ No

5. Do you currently have or are you being treated by a licensed member of the medical profession for any form of cancer (excluding basal cell skin cancer) **or** have you been treated for a recurrence of a previous cancer or metastatic cancer (cancer that has spread to other parts of the body)? ☐ Yes ☑ No

6. In the past **24 months** have you been diagnosed, treated, tested positive, given medical advice, recommended to have treatment, or prescribed medication by a licensed member of the medical profession for:
   ☐ Alzheimer's disease, dementia, or organic brain disorder;
   ☐ terminal illness that is expected to result in death within the next 12 months;
   ☐ amyotrophic lateral sclerosis (ALS);
   ☐ congestive heart failure or cardiomyopathy;
   ☐ amputation due to disease;
   ☐ sickle cell anemia;
   ☐ respiratory failure, cystic fibrosis, or pulmonary fibrosis;
   ☐ kidney failure, chronic kidney disease, or kidney dialysis;
   ☐ cirrhosis of the liver, liver failure, or any other chronic liver disease;
   ☐ organ or bone marrow transplant;
   ☐ diabetes with complications or in combination with a prior diagnosis of: stroke/TIA, heart disease or disorder, neuropathy, kidney disease, any circulatory disease that affects the heart and/or blood vessels, diabetic coma, or insulin shock? ☐ Yes ☑ No

7. Were you diagnosed by a licensed member of the medical profession with diabetes prior to age 30? ☐ Yes ☑ No

8. Have you been treated for or diagnosed by a licensed member of the medical profession with acquired immune deficiency syndrome (AIDS), AIDS-related complex (ARC), or tested positive for human immunodeficiency virus (HIV)? ☐ Yes ☑ No

9. Within the past **12 months** have you had any treatment, diagnostic testing, surgery, or hospitalization recommended by a medical professional which have not been completed or for which the results have not been received? ☐ Yes ☑ No

**Part F: Application agreement (continued)**

- I (or my authorized personal representative) am entitled to and will be sent a copy of this Authorization.
- This Authorization expires 24 months from the date I sign it. This time limit complies with the time limit, if any, permitted by applicable law in the state where the policy is delivered or issued for delivery.
- I may request to be interviewed in connection with the preparation of a consumer report and, upon written request, receive a copy of the report.
- I agree that a copy of this Authorization is as valid as the original.

**FRAUD WARNING: Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

Do you have any existing insurance policies or annuity contracts? ☐ Yes  ☒ No

Will the insurance applied for replace or change any insurance or annuity that is now or has recently been in force? *If "Yes," complete required replacement form(s).* ☐ Yes  ☐ No

**X** Mark  Dobronski                                    6/23/2022

Proposed insured's signature   eSignature          Date *(MM/DD/YYYY)*

☐ Please check if you are signing as a POA or guardian and provide the proper documentation.

**X**

Owner's signature *(if other than proposed insured)*          Date *(MM/DD/YYYY)*

**Part G: Agent certification**

I certify that the answers from the proposed insured to Part C were recorded accurately.

Does the applicant have any existing insurance policies or annuity contracts? ☐ Yes  ☒ No

Will the insurance applied for replace or change any insurance or annuity that is now or has recently been in force? ☐ Yes  ☐ No

KHONSAVAN       VONGDARA                         1557263

Agent Full Name *(Please print)*                    Agent number

**X** Khonsavan Vongdara                              6/23/2022

Agent's signature   eSignature                       Date *(MM/DD/YYYY)*

ICC21-FEAPP                           4