## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

    Plaintiff,

v.

**FAMILY FIRST LIFE, LLC**, *et al.*

    Defendants.

Case No.  **2:22-cv-12039-DPH-JJCG**

Honorable Denise Page Hood
United States District Judge

Honorable Jonathan J.C. Grey
United States Magistrate Judge

_____

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY
## IN OPPOSITION TO DEFENDANT FAMILY FIRST LIFE, LLC'S
## MOTION TO DISMISS, STAY OR TRANSFER
## <u>PURSUANT TO THE FIRST-TO-FILE RULE [ECF NO. 108]</u>

Plaintiff Mark W. Dobronski, appearing *in propria persona*, hereby submits this Notice of Supplemental Authority to alert the court to new developments regarding authority bearing on the issues raised in Defendant Family First Life, LLC's Motion to Dismiss, Stay or Transfer Pursuant to the First-to-File Rule ("Motion") [ECF No. 108].

In its Motion, Defendant Family First Life LLC ("FFL") urges this Court to either stay these proceedings or transfer this case to the United States District Court for the Southern District of Florida, arguing that a "substantially similar action was filed" there which is "signifcantly more procedurally advanced", to wit: *Family First*

1

*Life, LLC v. David Rutstein, et al.*, Case No. 9:22-cv-80243 (S.D. Fla. filed Feb. 15. 2022) ("Florida Action") [ECF No. 108, PageID.1380].

As support for their argument, FFL made reference to another lawsuit against FFL wherein FFL has filed a similar motion seeking to transfer that case to the Southern District of Florida pursuant to the first-to-file rule, to wit: *Birch v. Family First Life LLC*, et al., No. 3:22-cv-00815 (S.D. Cal. filed June 6, 2022) ("Birch"). [ECF No. 108-1, PageID.1411, ¶¶ 25-26]. However, subsequent to the filing of the Motion, the *Birch* court has entered its order **denying** FFL's Motion to Transfer of Stay under the first-to-file rule in that matter. See EXHIBIT 1.

Additionally, as to FFL's request that this Court stay proceedings in this action during the pendency of the Florida Action, it appears that the Florida Action is at the post-judgment stage. See Order Following Hearing entered July 2, 2023 in the Florida Action, attached hereto as EXHIBIT 2.

The attached exhibits provide new and additional support for this Court's consideration with respect to Defendant Family First Life, LLC's Motion to Dismiss, Stay, or Transfer Pursuant to the First-to-File Rule [ECF No. 108], and more specifically, as to the basis for why Defendant FFL's Motion should be **denied**.

Respectfully submitted,

Date: August 2, 2023

_____
Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## CERTIFICATE OF SERVICE

I, Mark W. Dobronski, certify that on **August 2, 2023**, I caused a copy of the foregoing *Plaintiff's Notice of Supplemental Authority in Opposition to Defendant Family First Life, LLC's Motion to Dismiss, Stay or Transfer Pursuant to the First-to-File Rule* to be served upon all parties of record by sending same in a sealed envelope, with first-class postage fully prepaid thereupon, and deposited in the United States Mail, addressed as follows:

D. Peter Valiotis, Esq.
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435

Lewis Jan Friedman
921 Ormsby Street
Vista, California 92084-1436

John T. Mihelick, Esq.
Dinsmore & Shohl, LLP
900 Wilshire Drive, Suite 300
Troy, Michigan 48084-1600

Jennifer W. Weller, Esq.
Hinshaw & Culbertson, LLP
151 North Frankin Street, Suite 2500
Chicago, Illinois 60606-1915

Matthew J. Lund, Esq.
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075-1505

James P. Cone, Esq.
King & Spalding LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309-7525

_____
Mark W. Dobronski

3

# EXHIBIT



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

GREG BIRCH, *individually and on behalf of all others similarly situated*, et al.,

Plaintiffs,

v.

FAMILY FIRST LIFE, LLC, et al.,

Defendants.

Case No. 22-cv-815-MMA (NLS)

**ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION TO TRANSFER OR STAY PURSUANT TO THE FIRST-TO-FILE RULE**

[Doc. Nos. 20, 21, 24]

19
20
21
22
23
24
25
26
27
28

In this putative class action, Plaintiffs Greg Birch, David Doehring, and Michael Borish ("Plaintiffs") allege they relied on false representations made by Defendants Family First Life, LLC ("FFL"), Shawn Meaike, and Andrew Taylor ("Defendants") in purchasing low-quality insurance "leads" while working as independent contractors for FFL, an insurance marketing organization.  Doc. No. 7 (Second Amended Complaint, the "SAC") ¶¶ 18, 23–26.  On October 11, 2022, Defendant FFL filed two motions: (1) a motion to dismiss Plaintiffs' SAC pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(2), and 12(b)(6); and (2) a motion to transfer or, in the alternative, stay pursuant to the first-to-file rule.  Doc. Nos. 21, 24.  On that same date, Defendants Meaike and Taylor filed their own motion to dismiss pursuant to Federal Rules of Civil

1  Procedure 12(b)(2), 12(b)(6), and the doctrine of forum non conveniens.  Doc. No. 20.

2  Plaintiffs filed oppositions, Doc. Nos. 31–33, to which Defendants replied,[1] Doc.

3  Nos. 38–40.  The Court found the matters suitable for determination on the papers and

4  without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local

5  Rule 7.1.d.1.  *See* Doc. No. 41.  For the reasons set forth below, the Court **GRANTS**

6  Defendants' motions to dismiss and **DENIES** Defendant FFL's motion to transfer or stay

7  pursuant to the first-to-file rule.

8  

**I. B<span>ACKGROUND</span>**[2]

9  This case centers around the insurance industry and one of its common features:

10  independent marketing organizations ("IMOs").  SAC ¶¶ 8–11.  Defendant FFL is an

11  IMO that distributes life insurance products to the public.  *Id.* ¶ 8.  Defendant Meaike is

12  the president of FFL and Defendant Taylor is one of FFL's "owners and officers."  *Id.*

13  Under the IMO model, Defendant FFL "contract[s] directly with [insurance]

14  carriers who . . . provide different variations of life insurance products that are sold

15  through [FFL]."  *Id.* ¶ 10.  FFL "then employs independent contractors[,] commonly

16  known as "[a]gents[,]" who market and distribute the carrier's insurance products to

17  consumers."  *Id.* ¶ 11.  Plaintiffs are former agents of FFL.[3]  *Id.* ¶¶ 23–24.  Plaintiffs

18  allege that "FFL markets itself as a superior IMO over others because it has access to,

19  and can provide its [a]gents with 'exclusive,' 'instant' leads that are 'newly generated'

20  and have 'never been used.'"  *Id.* ¶ 13.  FFL also characterized its leads as "fresh," which

21

22

23

24  [1] Plaintiffs filed an objection to Defendant FFL's reply in support of its motion to transfer, arguing that FFL improperly included new evidence and arguments.  *See* Doc. Nos. 40, 44.  Because the Court does

25  not rely on FFL's new evidence or arguments from its reply in its decision, the Court **OVERRULES** Plaintiffs' objection.

26  [2] Reviewing Defendants' motions to dismiss, the Court accepts as true all facts alleged in the SAC and construes them in the light most favorable to Plaintiffs.  *See Snyder & Assocs. Acquisitions LLC v.*

27  *United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

28  [3] Although Plaintiffs do not allege the date(s) they stopped working as FFL agents, they refer to their time working at FFL in the past tense.  *Id.* ¶¶ 23–24.

1  meant the leads consisted of "consumers who have recently been looking for insurance

2  products." *Id.* ¶¶ 13, 24.

3       These insurance leads are used by agents to find and contact prospective customers

4  interested in buying life insurance products. *Id.* ¶¶ 13–14. Defendant FFL "markets and

5  sells the leads exclusively through [its] customer relationship management system." *Id.*

6  ¶ 15. Within the customer relationship management system ("CRM"), agents can select

7  and purchase different types of leads including internet, direct mail, and social media

8  leads. *Id.* Plaintiffs allege that "FFL characterizes and represents to its [a]gents that the

9  leads are of high quality because they comprise of consumers who need insurance

10  products, and who have yet to be solicited by anybody else to purchase such products."

11  *Id.* ¶ 14. Plaintiffs purchased leads from FFL based on these representations, which were

12  made to them by officers of FFL, including Defendants Meaike and Taylor, "in phone

13  conferences, at company events, on YouTube videos when Plaintiffs enrolled with FFL,

14  and throughout their entire tenure with the company." *Id.* ¶ 25. Plaintiffs allege that they

15  eventually learned that Defendant FFL's representations were false because the leads

16  were "recycled many times over by other [a]gents in the company, had invalid contact

17  information, and included names of people who were not interested in purchasing

18  insurance products." *Id.* ¶ 26. Thus, Plaintiffs contend they "were induced into paying a

19  premium price for the leads when, in fact, they were not of the quality as represented."

20  *Id.*

21       Based on the foregoing, Plaintiffs initiated this action on behalf of themselves and

22  as representatives of all those similarly situated for: (1) Violation of California's False

23  Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, against all Defendants

24  (Count I); (2) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. &

25  Prof. Code § 17200 *et seq.*, against all Defendants (Count II); (3) Violation of California

26  Penal Code § 496 against all Defendants (Count III); (4) Violation of Texas's Deceptive

27  Trade Practices Act, Tex. Bus. & Com. Code § 17.46, against all Defendants (Count IV);

28  (5) Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204,

1  against all Defendants (Count V); (6) Violation of Florida Statute § 817.06 against all

2  Defendants (Count VI); (7) Breach of Written Contract against Defendant FFL (Count

3  VII); and (8) Breach of Oral Contract against Defendant FFL (Count VIII). *See generally*

4  SAC.

## II. DISCUSSION

### A.   Motion to Transfer or Stay

Before proceeding to Defendants' motions to dismiss, the Court first addresses Defendant FFL's motion to transfer or, in the alternative, stay pursuant to the first-to-file rule. Doc. No. 24. FFL seeks to transfer or stay this action in light of the *Family First Life, LLC v. David Rutstein, et al.*, No. 9:22-cv-80243-AMC-BER (S.D. Fla. filed Feb. 15, 2022) case in the Southern District of Florida (the "Florida Action").

#### 1.   *First-to-File Rule*

The first-to-file rule is a generally recognized, judicially created "doctrine of federal comity." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The rule provides the district court with the discretion to transfer, stay, or dismiss an action if the same parties and issues are already at issue in a proceeding before another district court. *Id.* at 94–95. The purpose of the first-to-file rule is to "maximize 'economy, consistency, and comity.'" *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). The rule is not to be mechanically applied, but "rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. When determining whether the first-to-file rule applies, the court must consider three factors: (1) the chronology of the lawsuits, (2) the similarity of the parties, and (3) the similarity of the issues. *Id.*

#### 2.   *Analysis*

##### a.   Chronology of Actions

The first factor is the chronology of the actions. The parties do not dispute that the Florida Action was filed before the present action. The Florida Action was filed on

1    February 15, 2022.  *See* Doc. No. 24-1 at 2 ¶ 3.[4]  Plaintiffs filed the present case on June

2    3, 2022.  *See* Doc. No. 1.  Accordingly, the first factor weighs in favor of granting the

3    motion.

4              b.    <u>Similarity of Parties</u>

5              The second factor is similarity of the parties.  FFL argues that the parties are

6    substantially similar because FFL is a party to both actions and "[a] single common party

7    is sufficient."  Doc. No. 24 at 10 (citing *Prime Healthcare Servs., Inc. v. Harris*,

8    No. EDCV 15-1934-GHK-DTBx, 2016 WL 6693152, at *4 (C.D. Cal. Mar. 31, 2016)).

9    Plaintiffs disagree and contend that the "one common party" rule espoused in *Prime*

10   *Healthcare* does not apply because Plaintiffs are not mentioned in the Florida Action's

11   operative complaint or any of its previous complaints.  Doc. No. 33 at 3.

12             The identity of the parties need not be exact.  *Kohn*, 787 F.3d at 1240.  The first-to-

13   file rule only requires "substantial similarity of parties."  *Id.*  The Ninth Circuit has held

14   that omission of one party from a second lawsuit does not defeat the first-to-file rule

15   applicability.  *See id.*; *see also Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 624

16   & n.3, 629 (9th Cir. 1991) (finding that the first-to-file rule applied even though the first-

17   filed case involved a defendant not named in the second case); *Pac. Coast Breaker, Inc.*

18   *v. Conn. Electric, Inc.*, No. 10-CV-3134-KJM-EFB, 2011 WL 2073796, at *3 (E.D. Cal.

19   May 24, 2011) ("The [first-to-file] rule is satisfied if some [of] the parties in one matter

20   are also in the other matter, regardless of whether there are additional, unmatched parties

21   on one or both matters.") (quoting *PETA, Inc. v. Beyond the Frame, Inc.*, No. 10-CV-

22   07576-MMM-SSx, 2011 WL 686158, at *2 (C.D. Cal. 2011)).  The main consideration

23   for the first-to-file rule is the requirement of parallel suits, not identical suits.  *Interstate*

24   *Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988).  "A 'suit is

25   "parallel" when substantially the same parties are contemporaneously litigating

26

27   ───────────────

28   [4] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1    substantially the same issues in another forum.'" *Id.* (quoting *Calvert Fire Ins. Co. v.*

2    *American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979)).

3         Here, the parties in both cases are not substantially similar.  FFL is a defendant in

4    the instant case but was the plaintiff in the Florida Action.  As noted above, it is

5    undisputed that FFL is the only party common to both cases.  The Court finds this

6    insufficient to satisfy the first-to-file rule.  *See Church v. California Dep't of Managed*

7    *Health Care*, No. 16-CV-00501-H-DHB, 2016 WL 11621588, at *6 (S.D. Cal. Apr. 15,

8    2016) (finding the first-to-file rule inapplicable where the defendants were the only

9    parties in both actions); *see also Abrahams v. Hard Drive Prods., Inc.*, No. C-12-01006-

10   JCS, 2012 WL 1945493, at *7 (N.D. Cal. May 30, 2012) (same).

11        Moreover, the cases relied on by FFL are readily distinguishable.  First, in *Prime*

12   *Healthcare*, the court there found the parties substantially similar where the plaintiff was

13   the only common party to each of the three cases at issue and the defendants in the

14   previous cases were "featured prominently" in the allegations of the plaintiff's complaint.

15   *See Prime Healthcare*, 2016 WL 6693152, at *4.  In its reply, FFL concedes that

16   Plaintiffs are not mentioned in its allegations in the Florida Action.  Doc. No. 40 at 5.

17   Despite this shortcoming, FFL argues that the Court should find the parties in this case

18   substantially similar because one of the Plaintiffs here, Birch, and Defendants Meaike

19   and Taylor, were identified as material witnesses by David Rutstein, one of the

20   defendants in the Florida Action.  Doc. Nos. 24 at 10; 40 at 6–7.  However, FFL does not

21   provide any authority, and the Court is unaware of any, involving the first-to-file rule

22   where a court determined that the parties were substantially similar merely because some

23   of the parties were implicated in discovery.

24        Next, FFL cites *IT Convergence v. Moonracer, Inc.*, No. 13-CV-04467-WHO,

25   2013 WL 6512732 (N.D. Cal. Dec. 12, 2013) and *Martin v. Geltech Solutions, Inc.*,

26   No. 09-CV-04884-CW, 2010 WL 2287476 (N.D. Cal. June 4, 2010) for the proposition

27   that courts have found parties substantially similar pursuant to the first-to-file rule "in this

28   exact situation where the only named party in common was plaintiff in the first action

1   and defendant in the second action."  Doc. No. 40 at 5.

2          In *IT Convergence*, Moonracer, a corporation, filed an action in North Carolina

3   against its former employee, John Collard, for breach of a non-compete covenant in

4   Collard's employment contract.  2013 WL 6512732, at *1.  Collard's new employer, IT

5   Convergence, subsequently filed a California action against Moonracer for interference

6   with IT Convergence's employment of Collard.  *Id.*  While Moonracer was a party to

7   both actions, Collard was not a party in the later-filed California action, and IT

8   Convergence was not a party to the first-filed North Carolina action.  *See id.* at *3.

9   However, because "IT Convergence [was] seeking relief based on Collard's employment

10  agreement," the court concluded that the parties were sufficiently similar for purposes of

11  a first-to-file analysis.  *Id.*  Here, there is no such overlap in allegations.  In the instant

12  action, Plaintiffs, former FFL independent contractors, are seeking relief based on their

13  theory that FFL committed fraud when it sold them poor quality insurance leads.  *See*

14  *generally* SAC.  In the Florida Action, FFL seeks relief against David Rutstein and

15  several other of its competitors—who are not former FFL independent contractors—

16  primarily based on its allegations that the defendants were perpetuating false and

17  defamatory statements against FFL.  *See generally* Doc. No. 24-2.  The Court recognizes

18  that the parties in the two actions only need to be substantially similar, *see Kohn Law*

19  *Grp.*, 787 F.3d at 1240, but here, the Court cannot conclude that the parties are

20  substantially similar because FFL "fail[s] to identify any privity or legal relationship"

21  between Plaintiffs and any of the defendants in the Florida Action.  *See Church*, 2016

22  WL 11621588, at *6.

23         Finally, *Martin* is also easily distinguished.  There, a company called Geltech

24  Solutions, Inc. filed an action against another company, Marteal Ltd., in Florida.  2010

25  WL 2287476, at *1.  Two individuals—who were the sole officers and directors of

26  Marteal—filed a subsequent complaint against Geltech and another company, RootGel

27  West, in California.  *Id.*  Geltech was the only party common to both actions.  Noting that

28  the individual defendants were "the sole officers and directors of Marteal," the court

1   determined that substantial similarity of parties existed to support the transfer of the

2   California action to Florida under the first-to-file rule.  *Id.* at *2.  As stated above, there is

3   no such relationship here.

4        For these reasons, the Court finds that the parties are not substantially similar, and

5   that the second factor weighs against granting the motion.

6                c.      Similarity of Issues

7        The third factor is similarity of the issues.  FFL argues that there is a substantial

8   overlap between the issues in this case and the Florida Action because both actions turn

9   on whether FFL "fraudulently markets low quality or 'recycled' leads."  Doc. No. 24 at

10  11–12.  Plaintiffs respond that "the question of whether leads were of a certain quality is

11  not a substantial issue in the Florida Action."  Doc. No. 33 at 4.

12       The issues in both cases "need not be identical, only substantially similar."  *Kohn*,

13  787 F.3d at 1240.  "To determine whether two suits involve substantially similar issues,

14  [courts] look at whether there is 'substantial overlap' between the two suits."  *Id.* at 1241;

15  *see also Pacesetter*, 678 F.2d at 95 (finding that the first-to-file rule applied because

16  "[t]he central questions in each [were] the validity and enforceability of three specific

17  patents" and "[t]he same three parties [were] involved in both suits").

18       Here, the Court agrees with Plaintiffs and finds that the issues involved in each

19  case are distinguishable.  The core issue in this case is whether FFL made

20  "misrepresentations about the quality of leads" that Plaintiffs purchased.  Doc. No. 33 at

21  4.  By comparison, the core issue in the Florida Action is whether David Rutstein and

22  several other defendants, who are competitors to FFL, "conspire[d] to destroy FFL's

23  business."  Doc. No. 40 at 7.  Although there is some mention of "leads" in FFL's

24  operative complaint in the Florida Action, *see* Doc. No. 24-2, there are numerous other

25  allegations that are not present in the instant case.  Indeed, the allegations in this case

26  primarily focus on acts taken by FFL rather than acts taken by FFL's competitors.  As

27  such, the Court finds that the issues in the Florida Action lack sufficient similarity to the

28

1    current case to justify invoking the first-to-file rule and transferring this suit to the
2    Southern District of Florida.

3         Accordingly, because Defendant FFL fails to establish two out of three prongs, the
4    Court **DENIES** its motion to transfer or stay this case based on the first-to-file rule.

5    **B.    Motions to Dismiss for Lack of Personal Jurisdiction**

6         Defendants move to dismiss based on lack of personal jurisdiction under Federal
7    Rule of Civil Procedure 12(b)(2).[5]  *See* Doc. Nos. 20-1 at 14–21; 21 at 16–18.  The Court
8    will address their arguments in turn.

9         *1.    Legal Standard*

10        "Federal courts ordinarily follow state law in determining the bounds of their
11   jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Because
12   "California's long-arm statute allows the exercise of personal jurisdiction to the full
13   extent permissible under the U.S. Constitution," the court's inquiry centers on whether
14   exercising jurisdiction comports with due process.  *Picot v. Weston*, 780 F.3d 1206, 1211
15   (9th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 125); *see also* Cal. Civ. Proc. Code
16   § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent
17   with the Constitution of this state or of the United States.").  Due process requires that the
18   defendant "have certain minimum contacts" with the forum state "such that the
19   maintenance of the suit does not offend 'traditional notions of fair play and substantial
20   justice.'"  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*,
21   311 U.S. 457, 463 (1940)).

22        Depending on the strength of those contacts, there are two forms that personal
23   jurisdiction may take: general and specific.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016
24   (9th Cir. 2008).  Here, Plaintiffs concede that Defendants are not subject to general
25   jurisdiction in California; therefore, the Court will only analyze whether specific

26

27   _____

28   [5] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

1   jurisdiction exists.  *See* Doc. Nos. 31 at 8; 32 at 8.  When a plaintiff relies on specific

2   jurisdiction, he must establish that jurisdiction is proper for "each claim asserted against a

3   defendant."  *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atl.*

4   *Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).  If personal jurisdiction exists

5   over one claim, but not others, the court may exercise pendent personal jurisdiction over

6   any remaining claims that arise out of the same "common nucleus of operative facts" as

7   the claim for which jurisdiction exists.  *Id.* (quoting *Action Embroidery Corp.*, 368 F.3d

8   at 1181).

9       A three-part test is used to assess whether a defendant has sufficient contacts with

10   the forum state to be subject to specific personal jurisdiction:

12       (1) The non-resident defendant must purposefully direct his activities or
        consummate some transaction with the forum or resident thereof; or perform

13       some act by which he purposefully avails himself of the privilege of
        conducting activities in the forum, thereby invoking the benefits and

14       protections of its laws;

16       (2) the claim must be one which arises out of or relates to the defendant's
        forum-related activities; and

18       (3) the exercise of jurisdiction must comport with fair play and substantial
        justice, *i.e.*, it must be reasonable.

20   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The

21   plaintiff has the burden of proving the first two prongs.  *CollegeSource, Inc. v.*

22   *AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If he does so, the burden shifts

23   to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would

24   not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477

25   (1985)).

26       The exact form of jurisdictional inquiry depends on the nature of the claims at

27   issue.  *Picot*, 780 F.3d at 1212.  For claims sounding in contract, courts generally apply a

28   "purposeful availment" analysis and ask whether a defendant has "purposefully avail[ed]

1  [himself] of the privilege of conducting activities within the forum State, thus invoking

2  the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (quoting

3  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  For claims sounding in tort, courts

4  instead apply a "purposeful direction" test and look to evidence that the defendant has

5  directed his actions at the forum state, even if those actions took place elsewhere.  *Id.* at

6  802–03.  As discussed in Section II.E. below, Plaintiffs have abandoned their contract

7  claims against Defendant FFL.  Therefore, the Court applies the purposeful direction test

8  in its analysis because Plaintiffs' remaining allegations involve tortious conduct.  *See*

9  *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1067 (S.D. Cal. 2019)

10  (applying purposeful direction test where UCL and FAL were alleged); *see also In re ZF-*

11  *TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 717 (C.D. Cal. 2022)

12  (examining whether defendants "purposefully directed" their activities where unfair and

13  deceptive trade practices claims were alleged).

14       In analyzing whether a court has specific personal jurisdiction over a tort claim, the

15  Ninth Circuit applies the three-part "effects" test derived from *Calder v. Jones*, 465 U.S.

16  783 (1984) (the "*Calder* test").  *Picot*, 780 F.3d at 1213–14 (citing *Schwarzenegger*, 374

17  F.3d at 803).  Under this test, a defendant purposefully directed his activities at the forum

18  if he: "(1) committed an intentional act, (2) expressly aimed at the forum state,

19  (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.*

20  (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  In applying this

21  test, courts must "look[] to the defendant's contacts with the forum State itself, not the

22  defendant's contacts with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277, 285

23  (2014).  Thus, a "mere injury to a forum resident is not a sufficient connection to the

24  forum."  *Id.* at 290.  Rather, "an injury is jurisdictionally relevant only insofar as it shows

25  that the defendant has formed a contact with the forum State."  *Id.*

26       The meaning of the term "intentional act" in the court's jurisdictional analysis is

27  essentially the same as in the context of intentional torts; namely, the defendant must act

28  with the "intent to perform an actual, physical act in the real world."  *Picot*, 780 F.3d at

1214 (quoting *Schwarzenegger*, 374 F.3d at 806). The second prong of the test, "express

aiming," asks whether the defendant's allegedly tortious action was "expressly aimed at

the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th

Cir. 2010). As to this prong, the exact nature of the court's analysis varies from case to

case and "depends, to a significant degree, on the specific type of tort or other wrongful

conduct at issue." *Schwarzenegger*, 374 F.3d at 807.

   2.   *Analysis*

   The Court first addresses the second factor of the *Calder* test for purposeful

direction: whether Defendants' alleged conduct was expressly aimed at California.

Meaike and Taylor argue that the Court lacks specific jurisdiction because "Plaintiffs do

not allege that either defendant directed any personal conduct at the forum." Doc. No.

20-1 at 17. FFL argues that "[a]ll of Plaintiffs' claims are based on their allegations that

FFL made misrepresentations about insurance leads" and that Plaintiffs fail to allege FFL

"made any of those representations in California or directed them to California." Doc.

No. 21 at 17.

   As an initial matter, many of the allegations in the SAC pertain to Defendants,

collectively, and Plaintiffs do not separate out each Defendants' actions in the challenged

conduct. This is improper. *See Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 973

(S.D. Tex. 2018) ("[A] plaintiff must submit evidence supporting personal jurisdiction

over each defendant, and cannot simply lump them all together") (citing *Calder*, 465 U.S.

at 790) ("Each defendant's contacts with the forum State must be assessed

individually.")).

   As to Defendants Meaike and Taylor, the former is a resident of Florida and the

latter is a resident of Nevada. SAC ¶¶ 6–7. Neither owns property in California. Doc.

Nos. 20-2 at 2 ¶ 4; 20-3 at 2 ¶ 4. The only allegations in the SAC that refer to Meaike

and Taylor individually include Plaintiffs' assertions that (1) Meaike is FFL's president,

1   (2) Taylor is an owner or officer of FFL,[6] and (3) Meaike and Taylor made

2   "representations regarding [FFL's] leads" to "Plaintiffs in phone conferences, at company

3   events, on YouTube videos when Plaintiffs enrolled with FFL, and throughout

4   [Plaintiffs'] tenure with [FFL]."  SAC ¶¶ 8, 25.  Indeed, Plaintiffs fail to provide specific

5   allegations in the SAC showing that Meaike and Taylor's alleged acts either occurred in

6   or were expressly aimed at California.  Without more specific facts, the Court finds that

7   Plaintiffs have not met their burden of showing *how* Meaike or Taylor's alleged

8   conduct—misrepresenting the quality of FFL's insurance leads—was expressly aimed at

9   California.  *See Professional's Choice Sports Medicine Prods., Inc. v. Hegeman*, No. 15-

10  cv-2505-BAS (WVG), 2016 WL 1450704, at *4 (S.D. Cal. April 12, 2016) ("[A] plaintiff

11  must point to contacts which demonstrate that the defendant '*expressly aimed* its tortious

12  conduct at the forum.'") (emphasis in original).  In addition, although Plaintiffs offer

13  additional facts in their opposition, including that both Meaike and Taylor "have given

14  multiple presentations in California to theaters full of Californians," Doc. No. 31 at 9, the

15  Court "cannot simply read into the SAC allegations which are not contained within it."[7]

16  *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1078 (S.D. Cal. 2020); *see also*

17  *Rojas v. Portfolio Recovery Assocs., LLC*, No. CV 16-9439-FMO-SSx, 2017 WL

18  2999030, at *2 (C.D. Cal. June 7, 2017) ("an opposition is not part of a plaintiff's

19  pleadings"); *Barbera v. WMC Mortgage Co.*, No C 04-3738, 2006 WL 167632, at *2 n.4

20  (N.D. Cal. Jan. 19, 2006) ("It is axiomatic that the complaint may not be amended by

21

22

23  [6] Taylor disputes this fact in his declaration in support of his motion and states that he is "not an officer

24  or employee of [FFL]" and "operate[s] an insurance agency in Nevada."  Doc. No. 20-2 at 2 ¶¶ 2, 3.
    [7] To the extent Plaintiffs' additional facts only involve professional duties performed by Meaike and

25  Taylor, this is insufficient to establish personal jurisdiction.  *See Ortolivo v. Precision Dynamics Int'l,*
    *LLC*, No. 22-cv-01812-JSW, 2022 WL 16823693, at *2–3 (N.D. Cal. Nov. 8, 2022) (finding no

26  evidence of express aiming for purposes of personal jurisdiction over the president of limited liability
    company where plaintiff only alleged facts that pertained to the president's performance of his official

27  duties); *see also Forsythe v. Overmyer*, 576 F.2d 779, 783-84 (9th Cir. 1978) ("[A] corporate officer
    who has contact with a forum only with regard to the performance of his official duties is not subject to

28  personal jurisdiction in that forum.").

1   briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor*

2   *Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *Van Buskirk v. Cable News Network, Inc.*, 284

3   F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the fact of the

4   complaint to decide a motion to dismiss.").

5          Plaintiffs also fail to allege sufficient facts to demonstrate that Defendant FFL

6   expressly aimed its alleged conduct at California.  FFL is a Connecticut limited liability

7   company with its principal place of business in Connecticut.  SAC ¶ 5.  Throughout the

8   SAC, Plaintiffs generally allege that FFL fraudulently represented the quality of its

9   insurance leads to Plaintiffs, but includes no facts about whether FFL made such

10  representations in California or whether they were expressly aimed at California.  FFL

11  correctly notes that Plaintiffs' "sole factual allegation related to California is that

12  [P]laintiff David Doehring lives there."  Doc. No. 21 at 18.  This is insufficient to

13  establish personal jurisdiction over FFL.  *See Walden*, 571 U.S. at 285 (finding that

14  courts must analyze "the defendant's contacts with the forum State itself, not the

15  defendant's contacts with persons who reside there").  As with Defendants Meaike and

16  Taylor, Plaintiffs allege additional facts to support personal jurisdiction in their

17  opposition to FFL's motion to dismiss, but again, the Court may not use these facts as a

18  basis to establish personal jurisdiction over FFL when the SAC itself is deficient.  *See*

19  *Schertzer*, 445 F. Supp. 3d at 1078.  Thus, the Court finds that Plaintiffs fail to

20  sufficiently allege facts that show how FFL expressly aimed its conduct at California.

21         Because Plaintiffs have not satisfied the express aiming element of the *Calder* test

22  as to any Defendant, the Court need not address any of the other prongs because

23  "[f]ailing to sufficiently plead any one of these three elements [from *Calder*] is fatal to

24  Plaintiff[s'] attempt to show personal jurisdiction."  *Rupert v. Bond*, 68 F. Supp. 3d 1142,

25  1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP*, 606 F.3d at 1128–29).  As such, the

26  Court declines to reach the remaining specific jurisdiction requirements, *i.e.*, whether

27  Plaintiffs' claims arise out of or relate to Defendants' forum-related activities and

28  whether the exercise of jurisdiction would comport with fair play and substantial justice.

1      In sum, the Court **GRANTS** Defendants' motions to dismiss for lack of personal

2  jurisdiction with leave to amend. *See McKesson HBOC, Inc. v. N.Y. State Common Ret.*

3  *Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) (noting that in the event of a

4  jurisdictional defect, dismissal without leave to amend is proper only if it is clear that the

5  complaint could not be saved by any amendment). Although Defendants are dismissed

6  for lack of personal jurisdiction, the Court will address further deficiencies in the SAC

7  for purpose of amendment.

8  **C.   Motion to Dismiss for Forum Non Conveniens**

9      Defendants Meaike and Taylor argue in their motion to dismiss that any claims

10  against Plaintiff Birch must be dismissed because a forum-selection clause included in a

11  contract between Meaike and Plaintiff Birch stated that "the parties agreed to litigate all

12  disputes over Birch's business relationship with Meaike and FFL . . . exclusively in

13  Connecticut."[8] Doc. No. 20-1 at 22. Plaintiffs do not oppose this argument. *See* Doc.

14  No. 31 at 12. As such, the Court **DISMISSES** Plaintiff Birch's claims against

15  Defendants.

16  **D.   Motion to Dismiss for Lack of Standing**

17      Defendant FFL argues that this Court lacks subject matter jurisdiction over

18  Plaintiffs' claim for injunctive relief because Plaintiffs do not have standing to seek an

19  injunction. Doc. No. 21 at 24. For the reasons stated below, the Court agrees.

20      *1.   Legal Standard*

21      Under Rule 12(b)(1), a party may move to dismiss based on the court's lack of

22  subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A federal court is presumed to

23  lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock*

24  *West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted).

25

26

27  [8] "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is
through the doctrine of forum non conveniens." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist.*

28  *of Tex.*, 571 U.S. 49, 60 (2013).

1    "Article III of the Constitution confines the federal courts to adjudication of actual

2    'Cases' and 'Controversies.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992).

3    Consequently, a "lack of Article III standing requires dismissal for lack of subject matter

4    jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658

5    F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted).  "For the purposes of ruling on a

6    motion to dismiss for want of standing," the court "must accept as true all material

7    allegations of the complaint, and must construe the complaint in favor of the complaining

8    party."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Tyler v. Cuomo*, 236 F.3d

9    1124, 1131 (9th Cir. 2000).

10        The "irreducible constitutional minimum" of Article III standing contains three

11    elements: (1) "the plaintiff must have suffered an 'injury in fact'"; (2) "there must be a

12    causal connection between the injury and the conduct complained of"; and (3) "it must be

13    'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a

14    favorable decision.'"  *Lujan*, 504 U.S. at 560–61.  The injury in fact must be an invasion

15    of a legally protected interest that is concrete and particularized, and actual or imminent,

16    not conjectural or hypothetical.  *Id.* at 560 (citation omitted).  Moreover, to satisfy the

17    casual-connection prong, the injury has to be fairly traceable to the challenged action of

18    the defendant, and not the result of the independent action of some third party not before

19    the court.  *Id.* (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

20        Furthermore, "[s]tanding must be shown with respect to each form of relief sought,

21    whether it be injunctive relief, damages or civil penalties."  *Bates v. United Parcel Serv.,*

22    *Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  To establish standing for injunctive relief, a

23    plaintiff must plead a "threat of injury" that is "actual and imminent, not conjectural or

24    hypothetical."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)

25    (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  Once plaintiffs have

26    been wronged, they are entitled to injunctive relief only if they can show that they face a

27    "real or immediate threat that [they] will again be wronged in a similar way."  *Mayfield v.*

28    *United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations and internal punctuation

1    omitted). "Where standing is premised entirely on the threat of repeated injury, a

2    plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar

3    way.'" *Davidson*, 889 F.3d at 967 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95,

4    102 (1983)).

5        *2.    Analysis*

6        FFL argues that "Plaintiffs lack standing to seek injunctive relief because they do

7    not allege they want or intend to purchase leads through FFL's CRM in the future." Doc.

8    No. 21 at 24. Plaintiffs, who are former agents of FFL, do not contest this. Instead,

9    Plaintiffs argue that "[a]gents who are still with FFL will need to buy leads, but they want

10   leads that are real and not sham but represented as being real and fresh." Doc. No. 32 at

11   14. Thus, Plaintiffs assert that potential unnamed class members—not Plaintiffs

12   themselves—have standing. This is improper. Plaintiffs cannot rely upon a class to

13   obtain injunctive relief that they themselves do not need. *See Spokeo, Inc. v. Robbins*,

14   578 U.S. 330, 338 n.6 ("That a suit may be a class action adds nothing to the question of

15   standing, for even named plaintiffs who represent a class must allege and show that they

16   personally have been injured, not that injury has been suffered by other, unidentified

17   members of the class to which they belong.") (cleaned up).

18       Consequently, the Court **GRANTS** FFL's motion to dismiss and **DISMISSES**

19   Plaintiffs' claim for injunctive relief.

20   **E.    Motions to Dismiss for Failure to State a Claim**

21       Defendants have also moved to dismiss the SAC in its entirety under Rules 9(b)

22   and 12(b)(6). Plaintiffs oppose. Because Defendants' Rule 9(b) and Rule 12(b)(6)

23   arguments in their separate motions to dismiss are substantially similar, if not identical,

24   the Court will consider them together.

25       *1.    Preliminary Matters*

26       The Court notes that Plaintiffs have conceded that they have not sufficiently

27   alleged facts to support their claims for violations of California Penal Code § 496 and of

28

1  Florida Statute § 817.06 (Counts III & VI).  *See* Doc. Nos. 31 at 16–18; 32 at 19–20.

2  Therefore, the Court **DISMISSES** Counts III and VI.

3  In addition, Plaintiffs do not respond to FFL's argument that their "breach of

4  contract claims should be dismissed because [Plaintiffs] do not identify the 'specific

5  provisions' that FFL allegedly breached."[9]  Doc. No. 21 at 35–36.  Under Ninth Circuit

6  precedent, the Court therefore considers Plaintiffs to have abandoned their contract

7  causes of action (Counts VII & VIII).  *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093,

8  1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did

9  not oppose dismissal in her opposition); *Shull v. Ocwen Loan Servicing, LLC*, No. 13-

10  CV-2999 BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a

11  party fails to address arguments against a claim raised in a motion to dismiss, the claims

12  are abandoned and dismissal is appropriate."); *see also Walsh v. Nev. Dep't of Human

13  Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that the plaintiff forfeited her right to

14  raise an issue on appeal because her opposition to a motion to dismiss failed to suggest a

15  continuing interest in pursuing the claim and therefore "effectively abandoned" it).  As

16  such, the Court also **DISMISSES** Counts VII and VIII.  Accordingly, the Court will

17  proceed with the sufficiency of the remaining claims (Counts I, II, IV & V) only.

18      *2.   Legal Standards*

19  When analyzing a complaint for failure to state a claim for relief under Rule

20  12(b)(6), the well-pled factual allegations are taken as true and construed in the light

21

22  _____

23  [9] FFL requests that the Court consider the terms and conditions Plaintiffs agreed to for their use of FFL's CRM in support of its motion to dismiss pursuant to the incorporation-by-reference doctrine.  Doc.

24  No. 21 at 13, 15–16.  Plaintiffs do not oppose this request.  Courts can consider documents under the "incorporation-by-reference" doctrine when a plaintiff "refers extensively to the document or the

25  document forms the basis of the plaintiff's claim."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  FFL

26  contends that the terms and conditions associated with the CRM is appropriate for consideration under the incorporation-by-reference doctrine because "Plaintiffs discuss the CRM throughout their SAC, and

27  they allege it created the contract that forms the basis of their breach [of contract] claim[s]."  Doc. No. 21 at 15.  The Court agrees and **GRANTS** FFL's request for incorporation-by-reference as to the

28  terms and conditions associated with FFL's CRM.  Doc. No. 21-2.

1    most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

2    Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the

3    assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are

4    insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*

5    *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid dismissal, the complaint must

6    plead sufficient facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp.*

7    *v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a

8    'probability requirement,' but it asks for more than a sheer possibility that a defendant

9    has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

10       Moreover, allegations of fraud are subjected to a heightened pleading standard

11   under Rule 9(b), which requires that "a party [alleging fraud] must state with particularity

12   the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a

13   plaintiff must include "the who, what, when, where, and how" of the fraud.  *Vess v. Ciba-*

14   *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations

15   omitted).  "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b)

16   for failure to plead with particularity is the functional equivalent of a motion to dismiss

17   under Rule 12(b)(6) for failure to state a claim."  *Id.* at 1107.  As such, dismissals under

18   Rule 9(b) and 12(b)(6) "are treated in the same manner."  *Id.* at 1107–08.

19       "If a complaint is dismissed for failure to state a claim, leave to amend should be

20   granted 'unless the court determines that the allegation of other facts consistent with the

21   challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight*

22   *Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well*

23   *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in

24   denying leave to amend where the amendment would be futile."  *Id.* (citing *Reddy v.*

25   *Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), cert. denied, 502 U.S. 921 (1991)).

26       3.    *Analysis*

27       Here, Defendants argue, and Plaintiffs do not dispute, that all of Plaintiffs' causes

28   of action either allege fraud or sound in fraud based on Defendants' "uniform course of

1  conduct"—FFL's alleged misrepresentation regarding insurance leads.  Doc. Nos. 20-1 at

2  22; 21 at 18; *see also* SAC ¶ 31.  Therefore, each claim is subject to the heightened

3  pleading standard of Rule 9(b).  *See Vess*, 317 F.3d at 1103–04 (holding that when a

4  plaintiff "allege[s] a unified course of fraudulent conduct and rely entirely on that course

5  of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to

6  'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity

7  requirement of Rule 9(b)").

8        To determine whether Plaintiffs meet the particularity requirement of Rule 9(b),

9  the Court analyzes whether Plaintiffs plead the "'the who, what, when, where, and how'

10  of the misconduct charged."  *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106).

11        Plaintiffs argue that the "who" is "FFL through its representatives, including its

12  CEO."  Doc. No. 32 at 12.  However, the Court agrees with Defendants that Plaintiffs'

13  "SAC never ties any specific speaker to any specific false statement."  Doc. No. 39 at 13.

14  Instead, Plaintiffs impermissibly "lump" Defendants together, generally stating that

15  "[t]he representations regarding the leads were made by officers of FFL, including, but

16  not limited to Meaike [and] Taylor. . . ."  SAC ¶ 25; *Destfino v. Reiswig*, 630 F.3d 952,

17  958 (9th Cir. 2011) "(Rule 9(b) 'does not allow a complaint to . . . lump multiple

18  defendants together but require[s] plaintiffs to differentiate their allegations when suing

19  more than one defendant.'")

20        Plaintiffs contend that the "what" are "the false representations as to the superior

21  qualities of the leads."  Doc. No. 32 at 12–13.  However, Plaintiffs do not allege with

22  particularity a single specific advertisement or representation made by Defendants.  *Pac.*

23  *Surrogacy USA, LLC v. Bai*, No. SA CV 19-01456-DOC-JDEx, 2019 WL 8129615, at *4

24  (C.D. Cal. Nov. 5, 2019).

25        Although Plaintiffs state that Defendants' alleged fraud occurred "during phone

26  conferences, at company events, and on YouTube videos," Doc. No. 32 at 13, the SAC is

27  devoid of any specific location of "where" any of these events occurred.  And as to the

28  "when," Plaintiffs argue that the fraudulent representations occurred when they enrolled

1    with FFL and "throughout their tenure" as agents.  *Id.*; SAC ¶¶ 23–24.  Plaintiffs allege

2    that they enrolled with FFL in 2018, 2020, and 2021, but do not provide when they

3    stopped working for FFL.  SAC ¶ 23.  The Court finds these timeframes both vague and

4    too broad to satisfy Rule 9(b).  "Put simply, Plaintiff[s] ha[ve] not narrowed the range of

5    possible dates of which a purported misrepresentation occurred or indicated *how* many

6    times [Defendants] made such misrepresentations."  *McCann v. Jupina*, No. 16-CV-

7    03244-JSC, 2017 WL 1540719, at *2 (N.D. Cal. Apr. 28, 2017) (emphasis added).  As

8    such, the Court finds that Plaintiffs fail to plead with particularity "the who, what, when,

9    where, and how" of their causes of action.  *Kearns*, 567 F.3d at 1124.

10            Therefore, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' SAC for

11    failure to meet the pleading requirements of Rule 9(b).[10]

12                              **III. CONCLUSION**

13            For the foregoing reasons, the Court **DENIES** Defendant FFL's motion to transfer

14    or stay pursuant to the first-to-file rule and **GRANTS** Defendants' motions to dismiss

15    with leave to amend.[11]  Plaintiffs may file a third amended complaint on or before

16    **May 4, 2023**.  Any third amended complaint will be the operative pleading, and therefore

17    Defendants must respond within the time prescribed by Federal Rule of Civil Procedure

18    15.  Any claim not re-alleged in the third amended complaint will be considered waived.

19    *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542,

20    1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v.*

21    *Maricopa Caty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with

22

23

24    _____

25    [10] In light of the Court's determination that Defendants are entitled to dismissal for Plaintiffs' failure to

26    plead their claims with sufficient particularity, the Court need not address Defendants' remaining 12(b)(6) arguments.

27    [11] Although Plaintiffs have amended their allegations twice before by way of the First Amended Complaint, Doc. No. 3, and SAC, until now, the Court has not ruled on the pleading sufficiency of

28    Plaintiffs' claims.  Because Plaintiffs could conceivably cure the above deficiencies, the Court grants Plaintiffs leave to amend.  *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

1  leave to amend which are not re-alleged in an amended pleading may be "considered
2  waived if not repled").
3      **IT IS SO ORDERED**.
4  Dated: April 13, 2023
5
6      HON. MICHAEL M. ANELLO
       United States District Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 22-80243-CIV-CANNON**

**FAMILY FIRST LIFE, LLC**,

      Plaintiff,

v.

**DAVID RUTSTEIN**, *et al.*

      Defendants.

_____/

**ORDER FOLLOWING HEARING**

      **THIS CAUSE** comes before the Court following a Motion Hearing held on June 29, 2023 [ECF No. 216], during which the Court heard argument on (1) Plaintiff's Motion to Seal [ECF No. 188]; (2) Plaintiff's Motion for Default Judgment as to Damages [ECF No. 189]; and (3) Plaintiff's Motion for Order to Show Cause as to Why Defendant David Rutstein Should Not be Held in Criminal Contempt [ECF No. 211].   As discussed in open court, it is hereby **ORDERED AND ADJUDGED** as follows:

    1. **On or before July 7, 2023**, Plaintiff shall file a supplemental memorandum stating with specificity the portions of its Motion for Default Judgment as to Damages and its corresponding Exhibits that should continue to be shielded from public view.   The supplemental memorandum shall not exceed five double-spaced pages and must include specific legal justification as to why the referenced portions should remain under seal.

    2. **On or before July 7, 2023**, Plaintiff shall file an amended proposed order on its Motion for Default Judgment as to Damages [ECF No. 189].

CASE NO. 22-80243-CIV-CANNON/Reinhart

3. **On or before July 14, 2023**, Plaintiff shall file a Renewed Motion for Attorneys' Fees in light of the adopted Report and Recommendation on Plaintiff's Motion for Attorneys' Fees as Sanctions [ECF No. 211] and the Court's Order accepting Judge Reinhart's Report [ECF No. 214].

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 2nd day of July 2023.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

2