## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

               Plaintiff,

v.

**FAMILY FIRST LIFE, LLC**, *et al.*

               Defendants.

Case No. **2:22-cv-12039**

The Honorable Mark A. Goldsmith
United States District Judge

The Honorable Kimberly G. Altman
United States Magistrate Judge

---

## PLAINTIFF'S OBJECTIONS TO
## REPORT AND RECOMMENDATION TO GRANT
## AMERICO, OMAHA, AND GREAT WESTERN'S
## MOTIONS TO DISMISS (ECF Nos. 103, 105, 113)
## AND TO GRANT IN PART AND DENY IN PART
## <u>OTHER DEFENDANTS' MOTIONS (ECF Nos. 106, 107, 143)</u>

Pursuant to Fed. R. Civ. P. 72(b)(2) and E.D. Mich. Local Rule 72.1(d), Plaintiff

Mark W. Dobronski submits these written objections to the Report and

Recommendation to Grant Americo, Omaha, and Great Western's Motions to Dismiss

(ECF Nos. 103, 105, 113) and to Grant in Part and Deny in Part Other Defendants'

Motions (ECF Nos. 106, 107, 143) [ECF No. 178] ("R&R") dated January 19, 2024.

### <u>Objection No. 1</u>

Plaintiff objects to the Magistrate Judge's R&R (V.4) that Plaintiff "has not

sufficiently alleged vicarious, or direct, liability as to the insurance companies, United,

1

Americo, and Great Western" and, therefore, dismissed the insurance companies from this action. [ECF No. 178, PageID.2583].

The R&R expressly finds that "[a]s for apparent authority, there is no indication that the principal (here, the insurance companies) held out to to Dobronski that the agents had authority to commit the tortious acts he pled. [ECF No. 178, PageID.2582]. This is where Plaintiff respectfully disagrees with the R&R. Indeed, Plaintiff notes that, throughout the R&R, the Magistrate Judge goes into extensive detail in her explanations as to each issue, but the R&R appears to gloss past the issue of apparent authority, only devoting two short sentences to the issue:

> "As for apparent authority, there is no indication that the principal (here, the insurance companies) held out to Dobronski that the agents had authority to commit the tortious acts he alleges. Therefore, they are not liable under this theory." [Citation omitted.]

[ECF No. 178, PageID.2582].

The Federal Communications Commission ("FCC") has devoted quite a bit of time and attention to explaining the issue of vicarious liability under the Telephone Consumer Protection Act ("TCPA") and, *inter alia*, apparent authority.  In fact, the FCC's pinnacle declaratory ruling on the issue of party liability under the TCPA was requested, and deferred to, by the United States Court of Appeals for the Sixth Circuit during the course of an appeal in the matter of *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 465 (6th Cir. 2010) (referring matter under the doctrine of primary

2

jurisdiction).  <u>See</u> *In the Matter of the Joint Petition Filed By Dish Network, LLC, et al. For Declaratory Ruling Concerning the TCPA*, 28 FCC Rcd. 6574, 6593, 2013 WL 1934349, at *15, ¶ 48 (FCC, May 9, 2013) ("*Dish Network Ruling*") ("[W]hile a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). An agency's interpretation of its own regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Johnson v. Cohen*, 6 Fed.Appx. 308, 311 (6th Cir. 2001).

In *Dish Network Ruling*, the FCC has provided guidance in the area of apparent authority, as follows:

> "[W]e find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that

3

is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships—which consumers may acquire through discovery, if they are not independently privy to such information — should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."

[*Dish Network Ruling*, 28 FCC Rcd. at 6592-93, 2013 WL 1934349, at *15, ¶ 46]. The FCC goes on further to state:

"[W]e see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof — at the time it files its complaint — that the seller should be held vicariously liable for the offending call."

[*Id.*, 28 FCC Rcd. at 6593, 2013 WL 1934349, at *15, ¶ 47].

Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. Restatement (Third) Of Agency § 2.03 (2006). Apparent

4

authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal. *Id.*, comment c.  As to the third person, apparent authority when present trumps restrictions that the principal has privately imposed on the agent. *Id.* The relevant appearance is that the principal has conferred authority on an agent. *Id.* Apparent authority, when present, often has the effect of reinforcing the legal effect of actual authority when actual authority has been conferred by a principal but is not readily provable by a third party. *Id.* Apparent authority is distinct from the circumstances of an agency relationship known to agent and principal, which may not be observable by a third party, even though the course of dealing between agent and principal will often be observed at least in part by third parties.  *Id.* A principal may not choose to act through agents whom it has clothed with the trappings of authority and then determine at a later time whether the consequences of their acts offer an advantage. *Id.* The FCC has expressly recognized these indicia of apparent authority as a basis for vicarious liability. *Dish Network Ruling*, 28 FCC Rcd. at 6586, 2013 WL 1934349, at *11, ¶ 34 n.102.

There is ample indicia in the First Amended Complaint [ECF No. 99] ("FAC") that the agents had apparent authority. Contrary to the finding set forth in the R&R, it is not necessary for Dobronski, at the pleading stage, to establish "that the principal (here the insurance companies) held out to Dobronski that the agents had authority to

commit the tortious acts he alleges" [ECF No. 178, PageID.2582]. It is only necessary for Plaintiff to establish his reasonable belief that the agent had the authority to act on behalf of the insurance company and that belief is traceable to the insurance company's manifestations. *See*, *e.g.*, *Jonna v. Latinum*, 617 F.Supp.3d 758, 775 (E.D.Mich., 2022).

Evidence of this apparent authority is seen in each of the calls where proprietary pricing was quoted to Plaintiff. To quote these prices, the agents reasonably were provided access to the insurance carriers' computer systems in order to have the detailed information regarding the nature and pricing of the seller's (insurance company's) products. The agents quoted Omaha pricing at Call 1 [ECF No. 99, PageID.1024, ¶ 107], Call 4 [ECF No. 99, PageID.1027, ¶ 132], Call 7 [ECF No. 99, PageID.1031, ¶ 154]; Call 20 [ECF No. 99, PageID.1042, Call 29 [ECF No. 99, PageID.1051, ¶ 294]; and Call 32 [ECF No. 99, PageID.1055, ¶ 326]. The agents quoted Americo pricing at Call 8 [ECF No. 99, PageID.1032, ¶ 160]; and Call 10 [ECF No. 99, PageID.1034, ¶ 175]. The agents quoted Great Western pricing at Call 12 [ECF No. 99, PageID.1036, ¶ 189].

The fact the insurance applications and policies were presented to Plaintiff were sent on the insurance company's forms complete with their proprietary trademarks and service marks, and mailed *directly* by the insurance company or  transmitted *directly*

from the insurance company's e-mail server[1] to Plaintiff is also evidence of the apparent authority of each of the agents which has been manifested by the insurance companies.  As examples: Americo [ECF No. 99, PageID.1033, ¶ 169], see ECF No. 118, PageID.1746-1750; Omaha [ECF No. 99, PageID.1028, ¶ 134]. See ECF No. 120-1, PageID.1806-1811; and Great Western [ECF No. 99, PageID.1037, ¶ 196], see ECF No. 116, PageID.1699-1704.

The fact that the insurance companies claim lack of knowledge as to, and disclaim, the actions of their agents does not absolve the insurance companies of vicarious liability.  Sellers (in this instance, the insurance companies) are required to monitor and police their telemarketers. As the FCC has declared, "allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions." *Dish Network Ruling*, 28 FCC Rcd. at 6588, 2013 WL 1934349, at *12, ¶ 37. The FCC also noted that the Third Circuit determined in an analogous context, "absent the application of agency-related principles, the seller (in this instance) 'would benefit from undeterred unlawful acts, and the statute's purpose ... would go unrealized.'" *Id.*, n.112 (citing American *Tel. and Tel. Co. v. Winback and*

---

[1] Logically, for the agent to be able to produce an insurance application of the insurance company's form, and to transmit that completed application form to Plaintiff via the insurance company's e-mail server, it is reasonable to conclude that the agent was authorized by the insurance company to have access to the insurance company's computer systems.

*Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3ʳᵈ Cir. 1994)).

Lastly, in the R&R, it was held that the insurance applications were not evidence of ratification because "[t]he insurance applications were sent to Dobronski by the agents, not the insurance companies, and though they purported to be offers of sale, the insurance companies are not alleged to have accepted any application from Dobronski or his aliases." [ECF No. 178, PageID.2583].   This finding in the R&R is clearly erroneous.   For example, Great Western directly mailed Plaintiff an insurance *policy*, not an *application*. [ECF No. 99, PageID.1037, ¶ 196]. See ECF No. 116, PageID.1699-1704. Logically, Great Western accepted the application, because it issued the policy.[2] Similarly, Americo mailed a policy to Plaintiff. [ECF No. 99, PageID.1033, ¶ 169]. See ECF No. 118, PageID.1746-1750.  Lastly, an application was emailed to Plaintiff for review by Omaha. [ECF No. 99, PageID.1028, ¶ 134]. See ECF No. 120-1, PageID.1806-1811.  This application was later followed up by the actual policy being mailed by Omaha to Plaintiff. See Exhibit 1.

For the foregoing reasons, Plaintiff respectfully requests the Court to sustain this objection, overrule the recommendation to dismiss, and find that Plaintiff has plausibly and sufficiently alleged vicarious liability as to the defendant insurance companies, United, Americo, and Great Western.

_____

[2]  The issuance of the policy by the insurance company also evidences a manifestation by the insurance company that the agent had authority to act on behalf of the insurance company.  Logically, if the agent had no authority, the insurance company would not have issued the policy.

## Objection No. 2

The R&R recommends that Count III of the FAC, which alleges "premature hang up" in violation of 47 C.F.R. 64.1200(a)(6), be dismissed because "Dobronski does not allege who placed these calls and could not plausibly do so, because he gathered no inofrmation about the callers.  Thus, the calls in question cannot be connected to any of the defendants." [ECF No. 178, PageID.2588].  Plaintiff disagrees.

Each of Calls 17, and 53-56 displayed the caller identification number of 734-228-7840. [ECF No. 99, PageID.1040, ¶ 218; PageID.1059, ¶ 348].  Throughout the FAC, many of the calls displayed the identical caller identification number of 734-228-7840, including Call 15 (Luke Friedman) [ECF No.99, PageID.1039, ¶¶ 209, 212], Call 21 (Shannon Adams) [ECF No. 99, PageID.1043-44, ¶¶ 239, 241], and Call 23 (Shannon Adams) [ECF No. 99, PageID.1045, ¶¶ 248, 250].   Further, the *faux* name of Bruce Petri was originated by Plaintiff during Call 15 [ECF No. 99, PageID.1039, ¶ 211] and was parroted by the caller during, *inter alia*, Call 21 [ECF No. 99, PageID.1043, ¶ 240] and Call 23 [ECF No.99, PageID.1045, ¶ 250].

It is a logical presumption that telephone calls from the same telephone number are originating from the same source.  Thus, Plaintiff is able to plausibly connect these calls to at least Defendants Friedman and Adams.

For the foregoing reasons, Plaintiff respectfully requests the Court to sustain this objection, overrule the recommendation to dismiss, and find that Plaintiff has plausibly and sufficiently alleged a claim under 47 C.F.R. § 64.1200(a)(6) set forth in Count III

of the FAC.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth, *supra*, Plaintiff urges that Plaintiff's objections be sustained and to the recommendations in the Report and Recommendation [ECF No. 178] that: the defendant insurance companies, Americo, Omaha, and Great Western be dismissed; and that Count III be dismissed, both be rejected.

Respectfully submitted,

Date: January 31, 2024

Mark W. Dobronski
Post Office Box 222
Dexter, Michigan 48130-0222
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## CERTIFICATE OF SERVICE

I hereby certify that on **January 31, 2024**, I electronically filed the foregoing *Plaintiff's Objections to Report and Recommendation to Grant Americo, Omaha, and Great Western's Motions to Dismiss (ECF Nos. 103, 105, 113) and to Grant in Part and Deny in Part Other Defendants' Motions (ECF Nos. 106, 107, 143)* with the Clerk of the Court via the Court's Pro Se Document Upload utility, which will send notification of such filing to all counsel of record via the CM/ECF system, and I additionally served *pro se* parties by sending same in a sealed envelope, with first class postage fully prepaid thereupon, and deposited in the United States Mail, addressed as follows:

> Lewis Jan Friedman
> 921 Ormsby Street
> Vista, California 92084-1436

And, additionally a copy to the Magistrate Judge by sending same in a sealed envelope, with first class postage fully prepaid thereupon, and deposited in the United States Mail, addressed as follows:

> Honorable Kimberly G. Altman
> United States Magistrate Judge
> Theodore Levin U.S. Courthouse
> 231 West Lafayette Boulevard, Room 605
> Detroit, Michigan 48226-2700

_____
Mark W. Dobronski

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,                    Case No.   **2:22-cv-12039**

                Plaintiff,                    The Honorable Mark A. Goldsmith
                                      United States District Judge

v.

                                      The Honorable Kimberly G. Altman

**FAMILY FIRST LIFE, LLC**, *et al.*      United States Magistrate Judge

                Defendants.

---

## INDEX OF EXHIBITS

**EXHIBIT 1:**      Letter from United of Omaha Life Insurance Company to "Derrick Simpson" dated April 13, 2022 transmitting life insurance policy

# EXHIBIT 1

## PLEASE RETURN THIS COPY IN ENVELOPE

## PLEASE SEE REVERSE SIDE

UNITED *of* OMAHA LIFE INSURANCE COMPANY
3300 Mutual of Omaha Plaza
Omaha, NE 68175
mutualofomaha.com



**MUTUAL** *of* **OMAHA**

APRIL 13, 2022

DERRICK SIMPSON
3140 BAKER RD # 222
DEXTER MI 48130-1119

BU3594161

Congratulations on the purchase of your new life insurance policy from United of Omaha Life Insurance Company. You have made the right decision to protect the people who are important to you. Thanks to you, their future and your dreams are now secure.

**Enclosed, please find your life insurance policy from United of Omaha Life Insurance Company. The items listed on the back of this page must be completed and returned for this policy to be effective. Please see the back of this page for more detail.**

We are privileged that you have chosen United of Omaha for your life insurance needs. We appreciate the confidence and trust that you have placed in our company, and we are dedicated to providing you with superior service. You can be certain that you have made the right choice.

Since 1926, United of Omaha Life Insurance Company, a wholly owned subsidiary of Mutual of Omaha Insurance Company, has been the choice for solid, secure protection. Our strong financial strength and stability demonstrate that we will be there for you when you need us.

Please do not hesitate to contact United of Omaha's customer service at 800-365-1416 (Monday-Thursday 7:00 a.m. to 5:30 p.m. (CT), Friday 7:00 a.m. to 5:00 p.m.). In addition, we are available anytime at www.mutualofomaha.com.

Please keep this letter and your policy in a safe place for future reference.

Again, congratulations on your new policy and thank you for choosing United of Omaha. We look forward to serving you for years to come.

Sincerely,

*James T. Blackledge*

James T. Blackledge
Chief Executive Officer

**ATTN: New Business**

0534000A40

IPAX_P22041350650100174   02640000010100100001000590