UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

            Plaintiff,                           Case No. 22-cv-12039

v.                                        HON. MARK A. GOLDSMITH

FAMILY FIRST LIFE, LLC et al.,

            Defendants.

_____/

### OPINION & ORDER
### (1) ADOPTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 178) AND (2) GRANTING IN PART AND DENYING IN PART THE MOTIONS TO DISMISS FILED BY DEFENDANTS UNITED OMAHA LIFE INSURANCE COMPANY (Dkt. 113); AMERICO FINANCIAL LIFE AND ANNUITY INSURANCE COMPANY (Dkt. 103); GREAT WESTERN INSURANCE COMPANY (Dkt. 105); FAMILY FIRST LIFE, LLC (Dkt. 107); VONGDARA, ADAMS, GRANT, POWELL, WICKHAM, IGWEH, AND BONANNO (Dkt. 106); AND SCHEIFELE AND CHRISTLE (Dkt. 143)

This case was brought by Plaintiff Mark Dobronski against Defendants Family First Life, LLC; United of Omaha Life Insurance Company; Americo Financial Life and Annuity Insurance Company; Great Western Insurance Company; Your Senior Care Inc.; and twelve individuals.[1] Dobronski alleges that all Defendants violated various provisions of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq.; the Michigan Telephone Companies as Common Carriers Act (MTCCCA), Mich. Comp. L. § 484.101 et seq.; and the Michigan Home Solicitation

---

[1] The individuals are: Khonsavan Vongdara; Lewis Jan Friedman; Shannon Adams; Donte C. Grant; Olivia Perez; Vanina E. Bonanno; Vanessa Isabel Powell; Emmanuel Chibuzor Igweh; Dario Joseph Wickham; Blake Hunter Scheifele; Paul Ryan Christle; and Gretchen Louise Drouhard.

1

Sales Act (MHSSA), Mich. Comp. L. § 445.101 et seq. Six motions to dismiss were filed on behalf of thirteen of the seventeen Defendants.[2] See Dkts. 103, 105, 106, 107, 113, 143.

This matter is presently before the Court on the Report and Recommendation (R&R) of Magistrate Judge Kimberly G Altman, issued on 1/19/24 (Dkt. 178). In the R&R, the magistrate judge recommends that the Court:

- Grant America's motion to dismiss (Dkt. 103)
- Grant Great Western's motion to dismiss (Dkt. 105)
- Grant United's motion to dismiss (Dkt. 113)
- Grant in part and deny in part Family First's motion to dismiss (Dkt. 107)
- Grant in part and deny in part the motion to dismiss filed by Vongdara, Adams, Grant, Powell, Wickham, Igweh, and Bananno (Dkt. 106); and
- Grant in part and deny in part the motion to dismiss filed by Scheifele and Christle (Dkt. 143).

R&R at 2.

For the below reasons, the Court adopts the R&R in part, and grants in part and denies in part all six motions to dismiss.

The following claims survive dismissal: Count I as to all Defendants; Count II as to Perez, Grant, Family First, America, and United; Count V as to Family First, America, and United; Counts VI through X as to Vongdara; Count XII as to Perez, Grant, Family First, America, and United; and Count XIII as to all Defendants.

---

[2] Three Defendants—Your Senior Care, Perez, and Drouhard—have not appeared in the case or filed any motions. Friedman has appeared pro se and has filed an answer.

# I.    BACKGROUND

The full factual background is set forth in the magistrate judge's R&R.  <u>See</u> R&R at 1–10.

Dobronski, proceeding pro se, brought this case alleging that Defendants violated the TCPA,

MTCCCA, and MHSSA through a series of 56 telephone calls he received between July 2021 and

February 2023.  <u>R&R</u> at 1 (citing Am. Compl. (Dkt. 99)).  He asserts the following claims:

<u>Count I</u>—TCPA: Autodialer calls (47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii))

<u>Count II</u>—TCPA: Recorded message calls (47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(3))

<u>Count III</u>—TCPA: Premature hang up (47 C.F.R. § 64.1200(a)(6))

<u>Count IV</u>—TCPA: Abandoned call (47 C.F.R. § 64.1200(a)(7))

<u>Count V</u>—TCPA: Do not call (47 C.F.R. § 64.1200(c)(2))

<u>Count VI</u>—TCPA: No written do not call policy (47 C.F.R. § 64.1200(d)(1))

<u>Count VII</u>—TCPA: Failure to train (47 C.F.R. § 64.1200(d)(2))

<u>Count VIII</u>—TCPA: Failure to record do not call request (47 C.F.R. § 64.1200(d)(3))

<u>Count IX</u>—TCPA: Failure to identify (47 C.F.R. § 64.1200(d)(4))

<u>Count X</u>—TCPA: No do not call list (47 C.F.R. § 64.1200(d)(6))

<u>Count XI</u>—TCPA: Falsified caller ID (47 C.F.R. § 64.1601(e)(1))

<u>Count XII</u>—MTCCCA: Unauthorized calls (M.C.L. § 484.125(2)(a))

<u>Count XIII</u>—MHSSA: Do not call list and no caller identification (M.C.L. § 445.111a(5) and M.C.L. § 445.111b(1))

**A. Defendants**

Dobronski alleges that Family First is a life insurance distributor that acts as an Insurance Marketing Organization (IMO).  R&R at 3 (citing Am. Compl. at PageID.1016).  IMOs—like Family First—employ independent contractors to market and distribute insurance carriers' products, collecting a commission for any product sold and paying a smaller commission to the agent who sold the product.  Id.  (citing Am. Compl. at PageID.1016).

Dobronski alleges that Family First sells telemarketing leads to its agents and provides them with access to automated telephone dialing systems (ATDS) to help agents reach their leads en masse.  Id.  at 4 (citing Am. Compl. at PageID.1017).  ATDS function by using a random number or sequential number generator to call persons at random without human involvement.  Id.  (citing Am. Compl. at PageID.1017).  Dobronski alleges both that Family First's utilization of ATDS is illegal and that Family First knows it is illegal.  Id. (citing Am. Compl. at PageID.1018–1019).

United, Americo, and Great Western are insurance companies who, according to Dobronski, contract with Family First to market their insurance products.  Id. (citing Am. Compl. at PageID.1019).  Dobronski alleges that the companies are aware of Family First's illegal telemarketing practices and that they, nonetheless, give Family First's agents access to their computer systems and authority to use their trademarks and service markets.  Id. at 5 (citing Am. Compl. at PageID.1020).

Dobronski alleges that, while the calls are originated in call centers overseas by "lead generators," they are ultimately transferred to Family First's agents.  Id. at 6 (citing Am. Compl. at PageID.1021–1022).  He identifies Vongdara, Adams, Grant, Perez, Bonanno, Powell, Igweh, Scheifele, Christle, and Drouhard as agents of Family First and alleges that they are each agents of one or more of the insurance companies.  Am. Compl. at PageID.996–999.  He alleges that

Friedman owns Your Senior Care and is an agent for Americo and Western. Id. at PageID.996. Dobronski alleges that the agents are aware of the call centers' tactics but maintain deliberate indifference to what is occurring so that they can represent that they are unaware of any illegal telemarketing conduct. R&R at 6 (citing PageID.1022).

**B.  The Calls**

Dobronski alleges that Family First and the agents outsource their calls to ATDS. Id. at 5 (citing Am. Compl. at PageID.1021). The use of ATDS is indicated when the person receiving a call experiences a delay, followed by a clicking or "boink" noise, and is then greeted by a live telemarketer. Id. at 5 (citing Am. Compl. at PageID.1021). It can also be indicated by a call recipient's caller ID saying the number is "spoofed," or manipulated to display a false number. Id. (citing Am. Compl. at PageID.1021). When the call recipient answers, he or she is first greeted by a lead generator. Id. at 5–6 (citing Am. Compl. at PageID.1021). If the lead generator determines the call recipient to be a qualified consumer, the lead generator will transfer the call to an agent, who will attempt to close the sale. Id. at 6 (citing Am. Compl. at PageID.1022).

Dobronski alleges that he has received hundreds of calls of this nature. Id. (citing Am. Compl. at PageID.1022). To determine who is calling him, Dobronski sometimes provides false but unique identifying information to the caller. Id. (citing Am. Compl. at PageID.1022). Then, if a later call ever references that earlier information, Dobronski can use information from that second call to identify the source of the initial, illegal ATDS call. Id. (citing Am. Compl. at PageID.1023). He calls this technique the "canary trap." Am. Compl. ¶ 100.

In his amended complaint, Dobronski describes in detail thirty-four such phone calls, received between July 2021 and February 2023, implicating each of the agents. See Am. Compl.

¶¶ 102–345.  He then lists twenty-two additional calls he received from March to August 2022, from which he did not obtain identifying information.  See Am. Compl. ¶¶ 346–349.

### C.  Report & Recommendation

Before the magistrate judge were six motions to dismiss, filed on behalf of thirteen Defendants. The magistrate judge recommends granting the motions to dismiss filed by Americo, Great Western, and United, and granting in part and denying in part the motions to dismiss filed by Family First and the Individual Defendants.[3]

The Individual Defendants filed an objection (Dkt. 181) to which Dobronski responded (Dkt. 183).  Dobronski filed an objection (Dkt. 179), to which United Omaha (Dkt. 184), Americo (Dkt. 185), Great Western (Dkt. 187), and the Individual Defendants (Dkt. 186) responded.  Family First filed an objection (Dkt. 180) to which Dobronski responded (Dkt. 182).[4]

The Court first addresses the portions of the R&R to which parties have specifically objected.  Because it declines to adopt the magistrate judge's recommendation to dismiss the insurance companies for Dobronski's failure to allege vicarious liability as to them, the Court then addresses the merits of the insurance companies' motions to dismiss.

---

[3] Adams, Bonanno, Christle, Grant, Igweh, Powell, Scheifele, Vongdara, and Wickham (together, the Individual Defendants) filed a joint objection (Dkt. 181); a response to Dobronski's objection (Dkt. 186); and a reply in support of their objection (Dkt. 188).  This group of Defendants had filed two separate motions to dismiss: one on behalf of Adams, Bonanno, Grant, Igweh, Powell, Vongdara, and Wickham (Dkt. 106), and one on behalf of Scheifele and Christle (Dkt. 143).

[4] The Individual Defendants also submitted a reply in support of their objection (Dkt. 188). Neither the Local Rules nor the Federal Rules of Civil Procedure provide a right to file a reply in support of objections to an R&R, see Shophar v. Gyllenborg, No. 17-cv-13900, 2018 WL 4442270, at *3 (E.D. Mich. Sept. 18, 2018), so the Court will not consider it.

## II.       ANALYSIS[5]

### A. Objections

### 1. Standing

Family First's first three objections are related to the magistrate judge's finding that Dobronski has Article III and statutory standing to bring claims based on Calls 1, 3, 4, 7, 8, 13, 15, 16, 18, 24, 29, 30, 31, and 33.  See FF Obj. at 3–12; R&R at 21.

In finding that Dobronski had standing to bring claims based on these fourteen calls, the magistrate judge focused on the Article III standing inquiry.  R&R at 15–23.  She explained that courts have concluded that unsolicited telemarketing calls invade privacy, cause annoyance, and waste time in a way "'sufficient to demonstrate concrete injury'" for Article III standing purposes. R&R at 20 (quoting Gorss Motels, Inc. v. AT&T Mobility, LLC, 490 F. Supp. 3d 476, 485 (D. Conn. 2020) (punctuation modified)).  She also cited a series of cases from courts in this circuit that confirm that receipt of unsolicited, ringless voicemail messages and unsolicited communications prohibited by the TCPA satisfy the Article III injury-in-fact requirement.  Id. (citing Dickson v. Direct Energy, LP, 69 F.4th 338, 349 (6th Cir. 2023); Chapman v. Nat'l Health Plans & Benefits Agency, LLC, 619 F. Supp. 3d 788, 795 (E.D. Mich. 2022); Sowders v. Scratch Fin., Inc., No. 3:23-cv-56, 2023 WL 7525900, at *6 (S.D. Ohio Nov. 14, 2023)).

---

[5] The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified).  Absent a specific objection, the issue is waived.  Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991).

To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The magistrate judge found that Dobronski did not have standing to bring claims arising out of the remaining calls in the amended complaint: Calls 2, 5, 6, 9, 10, 11, 12, 14, 17, 19, 20, 21, 22, 23, 25, 26, 27, 28, 32, and 34–56.  R&R at 21.  Because these calls were "follow-ups resulting from Dobronski's feigned interest in the insurance products being sold," they were not unsolicited, and Dobronski could not demonstrate that they had caused him injury.  Id. (citing Dobronski v. Total Ins. Brokers, LLC, No. 21-10035, 2021 WL 4452218, at *4 (E.D. Mich. Sept. 29, 2021)).

Dobronski and the Individual Defendants do not object to the magistrate judge's recommendations regarding standing.  Family First does object, arguing that (i) Dobronski cannot demonstrate that he has Article III standing to bring any of his claims, (ii) Dobronski cannot demonstrate that he has statutory standing to bring any of his claims, and (iii) even under the magistrate judge's standing analysis, Dobronski cannot demonstrate that he has standing to bring claims based on Calls 8, 16, 24, 30, or 33.[6]  See FF Obj. at 3–10.

With respect to Article III standing, Family First argues that Dobronski's status as a "professional plaintiff" who "employs an elaborate business scheme of soliciting and encouraging telemarketing calls to rack up statutory violations" precludes a finding that he has standing to bring his claims.  FF Obj. at 3–6.  Family First argues that where a plaintiff—like Dobronski—"invites the calls, he or she cannot claim a trespass into his 'rights to privacy and seclusion'": the rights to privacy and seclusion are personal rights, and "the calls Dobronski receives as a professional plaintiff are just potential business intake within the context of his moneymaking scheme, and

---

[6] In response to Family's First objection regarding Calls 8, 16, 24, 30, and 33, Dobronski suggests that "the Court should also re-examine the recommendation of dismissal" as to the calls the magistrate judge designated as follow-up calls.  Dobronski Resp. to FF Obj. at 22–23.  Because Dobronski failed to raise it in his objection, this argument is waived.  The Court will not consider an objection raised for the first time in response to another party's objection.

therefore cannot qualify as a violation of any <u>personal</u> rights to seclusion or privacy."  <u>Id.</u> at 4–5 (emphasis in original).

As support for this theory, Family First relies primarily on <u>Stoops v. Wells Fargo Bank, N.A.</u>, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016), and <u>Leyes v. Bank of America</u>, No. 11-7128, 2020 WL 1227410 (D.N.J. Mar. 13, 2020).  In <u>Stoops</u>, the plaintiff "purchased at least thirty-five cell phones and cell phone numbers with prepaid minutes for the purpose of filing [TCPA] lawsuits, . . . filed at least eleven TCPA cases in [the] jurisdiction," and "admitted that she files TCPA actions as a business."  <u>Stoops</u>, 197 F. Supp. 3d at 788, 789.  The court found that the plaintiff lacked standing, as her "only purpose in using her cell phones [was] to file TCPA lawsuits," and, therefore, she did not experience an actual invasion of privacy.  <u>Id.</u> at 800.  In <u>Leyse</u>, the plaintiff worked as "an investigator for his counsel of record . . . helping him prepare TCPA lawsuits."  <u>Leyse</u>, 2020 WL 1227410, at *1.  The court found that the plaintiff lacked standing where he did not assert that he suffered "nuisance, annoyance, inconvenience, wasted time, invasion of privacy, or any other such injury," and in fact, "welcomed such calls in his role as a paid investigator aiding his counsel in the preparation of TCPA lawsuits."  <u>Id.</u> at *4.

The magistrate judge, on the other hand, relies on <u>Cunningham v. Rapid Response Monitoring Servs., Inc.</u>, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017).  In that case, the plaintiff, Cunningham, brought TCPA claims arising out of 28 phone calls he received from telemarketers.  The <u>Cunningham</u> defendants argued—relying in part on <u>Stoops</u>—that Cunningham lacked standing to bring his claims because he was a "professional TCPA plaintiff" who has filed numerous suits under the TCPA.  <u>Id.</u> at 1194.  Therefore, the defendants reasoned, Cunningham suffered no injury, because he likely welcomed any calls that might support a cause of action.  <u>Id.</u>  The court found that Cunningham did have standing, explaining that "[n]othing in the Constitution

. . . requires a plaintiff to be a naïf" and that there is nothing "out of the ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient injury." Id. at 1195–1196.

Family First argues that the Court should follow Stoops and Leyes as opposed to Cunningham. FF Obj. at 3–10. According to Family First, Dobronski is an extreme example of a professional TCPA plaintiff, more akin to Stoops and Leyse than to Cunningham. Family First reads Leyse and Stoops as dictating that, where a TCPA plaintiff's conduct crosses the line into constituting a "business scheme," he or she cannot demonstrate injury for Article III standing purposes. FF Obj. at 6. In arguing that Dobronski "crosses the line" in this way, Family First notes that Dobronski (i) maintains at least nine other phone numbers, (ii) boasts that he uses "sophisticated telephone answering and recording equipment" to record callers, and (iii) "sets a 'canary trap' by providing false names and information to persons for the purpose of encouraging callbacks." FF Obj. at 7–8 (citing Am. Compl. ¶¶ 99–100). Dobronski has also filed "at least" 47 TCPA lawsuits—this, Family First argues, means that, "after a certain point, every call is a follow-up." Id. at 8. Family First contrasts this behavior with that of Cunningham, who "only brought a mere five TCPA lawsuits and perhaps simply 'realized that he could profit from suing.'" Id. at 4.

The Court agrees with the magistrate judge that Dobronski has Article III standing to bring claims based on the fourteen unsolicited calls. Adopting Family First's position would require drawing lines regarding when a TCPA plaintiff becomes a "professional" litigant and loses standing to bring any claims based on alleged violations of the statute. The Court follows Cunningham and declines to engage with such a line-drawing exercise. See Cunningham, 251 F. Supp. 3d at 1196 ("Defendants suggest that, by becoming a so-called 'professional plaintiff,' [Cunningham] has forfeited those rights because the calls alleged were not truly unwanted. Insofar

as <u>Stoops</u> endorses such a result, this Court disagrees.").  As the <u>Cunningham</u> court noted, "there is no 'amateurs only rule'" in litigation.  <u>Id.</u> at 1195.  This decision is supported by other district courts as well.  <u>See e.g.</u>, <u>Noviello v. Holloway Funding Grp.</u>, 2023 WL 2195768, at *3 (N.D. Tex. Feb. 23, 2023) (finding that "welcoming telemarketing calls so [plaintiff] can file lawsuits for damages does not affect his injury or standing under the TCPA"); <u>Perrong v. Victory Phones LLC</u>, 2021 WL 3007258, at *4 (E.D. Pa. July 15, 2021) ("The Court declines to give [defendants] a 'free pass' simply because they robo-dialed a caller aware of his rights under the TCPA.").

Family First argues in the alternative that <u>Cunningham</u> has been "severely undermined (if not overruled sub silentio)" by the United States Supreme Court's opinion in <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413 (2021).  <u>TransUnion</u> emphasized the distinction between Article III standing and statutes with private rights of action, thereby calling into question—Family First contends—the <u>Cunningham</u> court's decision to "defer[] heavily to Congress and its creation of a private right of action under the TCPA." FF Obj. at 6.  This argument is also unpersuasive.  First, deference to Congress's creation of a private right of action under the TCPA was only part of the <u>Cunningham</u> court's decision to find standing—it has no bearing on the opinion's statements that "[n]othing in the Constitution . . . requires a plaintiff to be a naïf" and that there is no "amateurs only" rule in litigation.  <u>Cunningham</u>, 251 F. Supp. 3d at 1195.  Additionally, other district courts have cited <u>Cunningham</u> favorably since <u>TransUnion</u>.  <u>See e.g.</u>, <u>Noviello</u>, 2023 WL 2195768, at *3.

Family First's second objection is that Dobronski does not have statutory standing under the TCPA.  <u>See</u> FF Obj. at 10–11.  Family First does not make new arguments here, instead offering a variation on its argument regarding Article III standing:  Dobronski does not fall into the zone of interests of the TCPA because he encourages the telemarketing calls to support his business of filing TCPA lawsuits.  This argument fails for the same reason that Family First's argument on

Article III standing fails: Dobronski's "business" of filing TCPA lawsuits has no bearing on his standing to bring claims under the statute. Indeed, this argument makes even less sense in the statutory standing context—as noted in the R&R, "it would make little sense for a plaintiff's statutory incentives to cut against his standing if he has, in fact, suffered the injury contemplated by the statute." R&R at 19.

Finally, Family First argues that the magistrate judge inconsistently applied her standing analysis across the calls. FF Obj. at 11–12. It argues that five of the calls the magistrate judge found standing for—Calls 8, 16, 24, 30, and 33—were follow-up calls and should be excluded from that list. Id. Family First does not explain why it thinks the magistrate judge erred in finding standing for these calls. But even reviewing the magistrate judge's finding on this de novo, the Court finds that Dobronski has sufficiently alleged standing for the five calls at issue.

First, Family First argues that Call 8 is a follow-up call from Calls 4, 5, and 6. FF Obj. at 11. As Dobronski points out in his response to the objection, if Call 8 were a follow-up call to Calls 4 and 5, the telemarketer would have asked for "Derrick Simpson," the canary trap name Dobronski had provided on Calls 4 and 5. Dobronski Resp. to FF Obj. at 19–20. If Call 8 were a follow-up to Call 6, the telemarketer likely would have asked for "Arthur Heaton," the person the telemarketer asked for during Call 6. Id. at 20. By alleging that, during Call 8, the telemarketer did not already have a name for Dobronski, Dobronski has successfully alleged that Call 8 was not a follow-up call.

Second, Family First argues that Call 16 was a follow-up call to Call 15. FF Obj. at 11. Here, Dobronski explains that, while he provided the canary trap name of "Bruce Petri" during Call 15, the telemarketer in Call 16 did not ask for Bruce Petri. Dobronski Resp. to FF Obj. at 20.

12

The Court finds that this is sufficient for Dobronski to establish, at this point in the case, that Call 16 is not a follow-up call.

Third, Family First argues that Call 24 is a follow-up call from Call 20.  FF Obj. at 11. Dobronski's allegation that Call 24 was initiated to his residential telephone while Call 20 was initiated to his cellular telephone is sufficient at this stage for Dobronski to have alleged that Call 24 is not a follow-up call.

Lastly, Family First argues that Call 30 is a follow-up call from Call 29, and that Call 33 is a follow-up call from Call 31.  FF Obj. at 11.  Family First does not provide any connection between these calls, and the Court does not discern any.

### 2.  Vicarious Liability

Both Family First and Dobronski object to the magistrate judge's findings on vicarious liability.  See FF Obj. at 12–15; Dobronski Obj. at 1–8.

In his amended complaint, Dobronski admits that no Defendant is directly liable for the alleged illegal unsolicited calls, as the calls came from unidentified overseas telemarketers who then transferred them to agents in the United States.  See R&R at 23.  He argues that Defendants are nonetheless vicariously liable for the calls.  Id.

The TCPA allows for vicarious liability under traditional agency theories.  See Lucas v. Telemarketer Calling from (407) 476-5680, No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (citing In re Dish Network, 28 FCC Rcd. 6574 (2013)).  The United States Court of Appeals for the Sixth Circuit, citing an FCC (Federal Communications Commission) Declaratory Ruling, explained:

> The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control."  Potential liability under general agency-related principles

extends beyond classical agency, however.   A principal may be liable in circumstances where a third party has apparent (if not actual) authority. Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal."  Other principles of agency law may support liability in particular cases.  For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits.  Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."

Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 372 (6th Cir. 2015) (quoting In re Dish Network, 28 FCC at 6586–6587).

The magistrate judge found that Dobronski has successfully alleged vicarious liability with respect to Family First and the Individual Defendants but found that he has not successfully alleged vicarious liability with respect to the insurance companies.  R&R at 23–33.   For the reasons explained below, the Court disagrees with the magistrate judge's finding with respect to the insurance companies and finds that Dobronski has successfully alleged vicarious liability with respect to all Defendants.

### a. Family First

Family First objects to the magistrate judge's finding that Dobronski has successfully alleged vicarious liability with respect to Family First.  FF Obj. at 12–16.

Dobronski alleges that Family First knowingly provides agents with access to ATDS, Am. Compl. at PageID.1016–1017, and that that Family First promotes the telemarketing scheme and is aware that the practices are illegal and tortious, id. at PageID.1018.  In his response to Family First's motion to dismiss, Dobronski further contends that Family First trains its agents on telemarketing.  Dobronski Resp. to FF Mot. to Dismiss at PageID.1924.  Dobronski also alleges that multiple agents identified themselves as affiliated with Family First and that Family First was listed as the agency on insurance applications sent to Dobronski.  R&R at 26.  The magistrate judge

found these allegations sufficient to allege, at the motion to dismiss stage, that Family First is vicariously liable for the alleged illegal practices.  R&R at 28.

Family First argues that Dobronski has failed to plead an agency relationship—a requirement for a finding of vicarious liability under the TCPA in the Sixth Circuit.  FF Obj. at 12 (citing Lucas, 2019 WL 3021233, at *5).  Family First argues that Dobronski has not demonstrated actual authority, as he has not alleged any facts to indicate that Family First maintained the requisite control over the agents—and especially not over the call center "lead generators."  FF Obj. at 13–14 (citing Dobronski v. NPS, Inc., No. 356617, 2022 WL 1194212, at *4 (Mich. Ct. App. Apr. 21, 2022)).  Family First also argues that Dobronski has not pleaded any facts to indicate it had any apparent authority over the agents.  FF Obj. at 14.  Finally, Family First states that, even if Dobronski had sufficiently pleaded an agency relationship, Family First is not a "seller" under the TCPA, and therefore, cannot be held vicariously liable.  Id. at 15.

In response, Dobronski reiterates his allegations that multiple telemarketers identified themselves as affiliated with Family First and that Family First was listed as the agency on insurance applications sent to him after the calls.  Dobronski Resp. to FF Obj. at 23–24.  He argues that this should be sufficient, at the pleadings stage, for his allegations of vicarious liability to survive.  Id.

The Court agrees with the magistrate judge that Dobronski's allegations of vicarious liability are sufficient for his claims against Family First to survive Family First's motion to dismiss.  As the magistrate judge noted, Dobronski's allegations here are similar to those made in Dobronski v. SunPath Ltd., No. 19-13094, 2020 WL 8840311, at *4 (E.D. Mich. July 27, 2020), in which the district court found that the allegation that the caller was "affiliated with [defendant]" "provide[d] support for [p]laintiff's effort to hold [the defendant] responsible for the phone calls

giving rise to his claims in this case, whether as the direct initiator of these calls or, perhaps, under a theory of vicarious liability." See R&R at 26–27.  The other cases the magistrate judge cites as finding vicarious liability when faced with similar facts are also persuasive.  See id. at 27 (citing Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 662 (4th Cir. 2019) (finding vicarious liability where one defendant authorized another to use its name and logo in carrying out its operation, took no meaningful action to ensure TCPA compliance, and profited from the other defendant's actions); Hossfeld v. Gov't Emps. Ins. Co., 88 F. Supp. 3d 504, 510 (D. Md. 2015) (finding defendant company liable for the actions of third-party telemarketers where it contracted with them, created scripts for them, knew they were using ATDS, and had them make calls with ATDS before forwarding the calls to its representatives)).  While it remains to be seen whether Family First actually had an agency relationship with the agents, Dobronski's allegations at this point are not implausible.

The Court is not persuaded by Family First's argument that it is not a "seller," and therefore, cannot be held vicariously liable under the TCPA.  The TCPA defines a "seller" as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. . . ." 47 C.F.R. § 64.1200(f)(9). While the products or services here may ultimately be sold by the insurance companies, Dobronski successfully alleges that the calls at issue are made "on behalf" of Family First.  See R&R at 24–28; Am. Compl. at PageID.1016–1018.  The FCC has explained that the policy reason for imposing vicarious liability on a seller as well as direct liability on the telemarketer is that "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers." In re Dish Network, 28 FCC Rcd. at 6588.  It would be contrary to this policy to allow Family First to escape

liability simply because it operates as an intermediary between the insurance companies and the agents.

Family First additionally argues that the R&R inconsistently applies its theory of vicarious liability across all calls.  FF Obj. at 15–16.  Specifically, it argues that Dobronski has alleged no Family First involvement in Calls 3, 15, and 16.  Id.  The Court disagrees and finds that Dobronski has successfully alleged Family First's involvement in these three calls.

Dobronski alleges that he told the unidentified caller in Call 3 that his name was "Arthur Heaton."  Am. Compl. ¶ 126.  Because Perez asked to speak with "Arthur Heaton" during Call 6, a call in which she identified herself as "with" Family First, Id. ¶¶ 147–148, Dobronski has successfully alleged Family First's involvement with Call 3.  A similar connection exists with respect to Call 15.  While the agent on Call 15 did not identify himself as working with Family First, Dobronski alleges that he provided the caller with the name "Bruce Petri" on that call.  Am. Compl. ¶ 211.  "Bruce Petri" was the name Adams asked for during calls 21 and 23—during which she identified herself as working for Family First.  Am. Compl. ¶¶ 240–241, 250–251.

In Call 16, the caller identified himself as "Mike Webster."  Am. Compl. ¶ 216.  Dobronski did not provide a name.  Id.  In Call 22, the caller once again identified himself as "Mike Webster." ¶ 244.  He referred to Dobronski as "Bruce Petri."  As explained above, "Bruce Petri" is a name used by Adams in Calls 21 and 23, during which calls she identifies herself as an employee of Family First.  In sum, Call 16 is connected to Call 22 by the name "Mike Webster," Call 22 is connected to Calls 21 and 23 by the name "Brue Petri," and Calls 21 and 23 are connected to Family First by Adams, the telemarketer on those calls.

The connections alleged in all of these calls are at least plausible and thus are sufficient at the motion to dismiss stage.

### b. Individual Defendants

The magistrate judge also found that Dobronski successfully alleged vicarious liability with respect to the Individual Defendants.  R&R at 28–30.  No objections were filed regarding this finding, so the Court need not review it.  The Court adopts the magistrate judge's finding on this issue.

### c. Insurance Companies

The magistrate judge found that Dobronski has not successfully alleged vicarious liability as to the insurance companies.  R&R at 30–33.  She found that Dobronski's allegations offered "no indication [that the insurance companies] directed or acquiesced in the conduct of having offending calls placed by overseas telemarketers and then transferred to their agents."  Id. at 31. While Dobronski alleged that the insurance companies were aware of the alleged violations, the magistrate judge found that those allegations do not suffice to plausibly allege vicarious liability. Id. (citing Lucas, 2019 WL 3021233).

Dobronski objects to this conclusion.  He argues that he has successfully alleged that the insurance companies had apparent authority over the agents or, alternatively, that they ratified the agents' behavior.  Dobronski Obj. at 1–8.  With respect to apparent authority, he points to his allegations that the agents quoted United, Americo, and Great Western pricing during the calls and that the insurance applications and policies presented to him were sent on the companies' forms "complete with their proprietary trademarks and service marks, and mailed directly by the insurance company or transmitted directly from the insurance company's e-mail server."  Id. at 6– 7 (emphasis in original).  Dobronski also argues that the insurance policies sent to him from the companies were evidence of ratification.  Id. at 8.

18

The three insurance companies filed responses to this objection.  United and Americo cited Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365 (6th Cir. 2015), an opinion the magistrate judge also cited in finding that Dobronski has not successfully alleged that the insurance companies were vicariously liable under a theory of apparent authority.  Americo Resp. to Dobronski Obj. at 3–4; United Resp. to Dobronski Obj. at 5; R&R at 32.  In Keating, the Sixth Circuit upheld a district court's summary judgment ruling that a defendant did not have any apparent authority over telemarketers where "nothing in the record . . . [could] be construed to indicate that the defendants held out to third parties, or to anyone else, that [telemarketer] was authorized to send text messages to individuals who had not agreed to receive them."  Keating, 615 F. App'x at 374.  Americo argues that Dobronski has similarly failed to plead that the insurance companies "held out" to anyone that the telemarketers were authorized to engage in the alleged violations.  Americo Resp. to Dobronski Obj. at 3–4.

The Court finds that Dobronski has sufficiently alleged vicarious liability as to the insurance companies.  Dobronski alleges that the insurance companies were "each well aware that FFL and its agents engage in illegal telemarketing to sell their respective insurance products." Am. Compl. ¶ 87.  He alleges that they nonetheless "len[t] support to the illegal telemarketing activities" by giving agents access to their computer systems and the authority to use the company's trademark and service market," id. ¶ 88, and by mailing applications and policies to Dobronski after his calls with the agents, id. ¶¶ 134, 169, 196.

These allegations are sufficient to allege apparent authority or ratification at the pleading stage, which contrasts with the summary judgment stage at which Keating was decided.  While the insurance companies will later have the opportunity to demonstrate that they did not exercise apparent authority over the agents or ratify their illegal actions, Dobronski's allegations suffice to

19

make out a claim, at the motion to dismiss stage, that the insurance companies "held the agent out to third parties as possessing sufficient authority to commit" these acts, or alternatively that they ratified the behavior by knowing about it and nonetheless sending applications or policies. By alleging that the insurance companies had knowledge of the improper conduct and that they did not take any action to prevent that conduct from continuing, Dobronski has properly alleged that the insurance companies are vicariously liable. See Keating, 615 F. App'x at 374 (citing In re Dish Network, 28 FCC Recd. at 6592) ("[A] seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.")).

### 3.  Pleading Requirements: Group Pleading

Family First also objects to the magistrate judge's finding that Dobronski did not engage in impermissible group pleading in violation of Rule 8 of the Federal Rules of Civil Procedure.[7] FF Obj. at 16–17. Family First had made this argument in its motion to dismiss, and the magistrate judge rejected it, explaining that Dobronski has alleged each defendant's role in the alleged violations with sufficient specificity. R&R at 51–54.

To support its argument, Family First cites Dobronski v. Tobias & Assocs., et al., No. 5:23-cv-10331, 2023 WL 7005844, at *4 (E.D. Mich. Sept. 25, 2023), report and recommendation adopted in part, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024), in which the magistrate judge

---

[7] Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Courts have found that "'shotgun' allegations of general misconduct" by a group of defendants is not sufficient to state a claim against each. Kerrigan v. ViSalus, Inc., 112 F. Supp. 3d 580, 601 (E.D. Mich. 2015).

recommended dismissing Dobronski's complaint for impermissible group pleading.  FF Obj. at 17.
The magistrate judge already considered <u>Tobias</u> in the context of group pleading, and she declined
to follow it.  <u>See</u> R&R at 53–54 (explaining that "[t]his is not a case where the entire complaint is
unclear as to which defendants are liable for which calls.")

Family First argues that the magistrate judge should have adopted the <u>Tobias</u> opinion's
emphasis on Dobronski's history of litigation in this district—the magistrate judge in the <u>Tobias</u>
opinion noted Dobronski's previous Rule 11 sanctions, his "unusual volume" of cases, and his
attempted "gamesmanship" with the court.  FF Obj. at 17 (citing <u>Dobronski</u> at *1, *1 n.1, *3).

The Court is not persuaded that the magistrate judge erred in finding Dobronski's pleadings
permissible.  As explained by the magistrate judge, Dobronski has outlined each Defendant's role
in the violations he alleges, providing sufficient clarity into which Defendants are liable for which
calls.  <u>See</u> R&R at 54.   Family First does not explain how <u>Tobias</u>'s consideration of Dobronski's
prior lawsuits affected that court's consideration of his group pleading, and the Court does not see
a connection.

### 4.  Count I

The Individual Defendants object to the magistrate judge's recommendation that the Court
not dismiss Count I of the amended complaint.  Individual Defs. Obj. at 1–3.  In Count I, Dobronski
alleges that Defendants violated the TCPA and its implementing regulations, 47 U.S.C. §
227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii), by initiating calls using ATDS, which dial
random or sequential numbers without prior consent of the called party.  <u>See</u> Am. Compl. at
PageID.1062–1063.

The magistrate judge found that Dobronski has alleged multiple indicia of the calls that
make his allegation of ATDS plausible: namely, that the calls he received had "multi-second delays

and/or a 'boink' or clicking sound . . . before a live telemarketer comes on the line," that some calls were "simply dead air," and that "the caller identification number display[ed] [was] 'spoofed' or manipulated to display a false telephone number."  R&R at 35–36 (Citing Am. Compl. at PageID.1021).  Dobronski alleges these qualities for almost every phone call that he received.

The Individual Defendants point out that, of the calls Dobronski seeks relief for in Count I, only calls 15, 31, and 33 survive the R&R's standing analysis.  Individual Defs. Obj. at 2.  Given that Dobronski does not allege that any of the Individual Defendants were involved in those three calls, they argue, the Court should dismiss Count I as to each of the Individual Defendants.  Id. at 2–3.

In response, Dobronski explains that those three calls were each plausibly connected to the Individual Defendants.  The Court agrees.  In Call 15, for example, Dobronski provided the caller with a fake name ("Bruce Petri") that was then asked for by the callers in Calls 21–23.  Dobronski Resp. to Individual Defs. Obj. at 2.  Because he alleges that Calls 21 and 23 were transferred to Adams and Call 22 was transferred to Wickham, Dobronski has alleged that Call 15 is plausibly connected to Adams and Wickham, two of the Individual Defendants.  Id.  Because it finds that Call 15 is plausibly connected to two of the Individual Defendants and because Call 15 is one of the calls on which Count I is premised, the Court need not review Calls 31 and 33 in this opinion.

### 5.  Count III

Dobronski objects to the magistrate judge's recommendation that the court dismiss Count III.  Dobronski Obj. at 9.  Count III alleges that Defendants violated the TCPA prohibition on premature hangups.  See Am. Compl. ¶¶ 363–365 (citing 47 C.F.R. § 64.1200(a)(6)).  The magistrate judge recommends that Count III be dismissed because "Dobronski does not allege who

placed these calls and could not plausibly do so, because he gathered no information about the callers. Thus, the calls in question cannot be connected to any of the defendants." R&R at 37–38.

Dobronski argues that calls 17 and 53–56, on which this count as based, displayed the same caller ID number as calls 15, 21, and 23: "It is a logical presumption that telephone calls from the same telephone number are originating from the same source." Dobronski Obj. at 9. Therefore, he says he can connect the calls to Friedman and Adams.

Regardless, Dobronski did not plead this in the amended complaint. His theory that Defendants are responsible for those calls because the caller IDs for some of these calls matched caller IDs associated with the Individual Defendants on prior calls—as the Individual Defendants argue in their response, Individual Defs. Resp. at 2—does not cure the pleading deficiency.

### 6. Call 12

The magistrate judge lists Call 12 as one of the follow-up calls for which Dobronski does not have standing. R&R at 21. This conclusion is before the Court now because of the objection filed by the Individual Defendants. Call 12 is the only call that contains allegations specific to Scheifele or Great Western. See Am. Compl. ¶¶ 182–198. Therefore, the Individual Defendants argue, if Dobronski does not have standing to bring claims based on Call 12, Scheifele should be dismissed from the action entirely. Individual Defs. Obj. at 4.

In response, Dobronski argues that he does have standing to bring claims related to Call 12, and Scheifele rightly remains in the lawsuit. Dobronski Resp. to Individual Defs. Obj. at 3–5. The Court agrees with Dobronski.

In the amended complaint, Dobronski alleges that the caller on Call 12 knew his name but did not know any of the canary trap information he had provided in earlier calls. He also alleges that, after the call, "Western mailed a $5,000.00 life insurance policy to [Dobronski] which policy

included the 'canary trap' information" Dobronski had provided during Call 12.  Am. Compl. ¶ 196.  The Court finds this sufficient to plead an unsolicited call for which Dobronski has standing.  The Court declines to adopt the magistrate's recommendation with respect to Call 12.  Scheifele will therefore remain in the lawsuit.

### B. The Insurance Companies

Because the magistrate judge recommends dismissing the insurance companies for Dobronski's failure to allege vicarious liability, she did not consider the arguments in the insurance companies' motions to dismiss or otherwise evaluate the claims in the amended complaint as to each of them.  Because the Court rejects the recommendation to dismiss the insurance companies, it will now evaluate their motions to dismiss on the merits.

As explained above, the Court adopts the magistrate judge's recommendation to dismiss Count III as to all Defendants.  The magistrate judge also recommends dismissing Counts VI and XI, and no parties object.  Therefore, the Court will not evaluate liability of the insurance companies with respect to those counts.  Because the magistrate judge already evaluated arguments regarding lack of standing, failure to allege vicarious liability, failure to allege willfulness, and impermissible group pleading—and the Court has reviewed where parties raised objections—it will also not consider those arguments, where raised by the insurance companies.

### 1. Count I

As explained above, in Count I, Dobronski alleges that Defendants initiated calls using ATDS in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).  See Am. Compl. ¶¶ 357–359.

In its motion to dismiss, Americo argues that (i) Dobronski's allegations with respect to the use of ATDS are conclusory, (ii) only two of the calls alleged to have used ATDS—Calls 21 and

Calls 23—"bear any relationship to Americo," and (iii) the claim fails given the "existing business relationship" between Dobronski and the callers identified.  Americo Mot. to Dismiss at 11.  Great Western makes no specific argument regarding Count I, and United "adopts by reference" the arguments made by Family First, which were already addressed by the magistrate judge.  United Mot. to Dismiss at 20.

The Court finds that Count I should not be dismissed as to any of the insurance company Defendants.  First, the magistrate judge reviewed Dobronski's allegations and found them sufficient to state a claim, a finding no one objected to and with which the Court agrees.

Second, contrary to Americo's assertion, Calls 21 and 23 are not the only calls for which Dobronski alleged both the use of ATDS and Americo's involvement.  In Call 8, for example, Dobronski alleges indicators of ATDS (a 4–5 second delay and a click after saying hello before a telemarketer came on the line).  Id. ¶ 157.  He also alleges that the agent he spoke with on the call attempted to sell him a life insurance policy from Americo.  Id. ¶ 160.  This is sufficient to allege at least one ATDS violation by Americo.  And because Call 8 was "unsolicited," Dobronski's allegations show no "business relationship" with respect to that call.

Dobronski has also alleged at least one ATDS violation by United.  For Call 1, Dobronski alleges indicators of ATDS (a 4–5 second delay after saying hello before a telemarketer came on the line).  Id. ¶ 104.  He also alleges that he provided his email address on the call and that after the call he received an email from the agent he had spoken with attaching an application for life insurance with United.  Id. ¶ 113.

The Court also will not dismiss this Count as to Great Western.  The only call that includes any allegations of Great Western's involvement is Call 12.  As explained above, the Court finds that Dobronski has alleged standing with respect to that call.  In Call 12, Dobronski plausibly

alleges indicators of ATDS (a several second delay after saying hello before a telemarketer came on the line).  Id. ¶ 184.  He also alleges that the agent sold him a life insurance policy "to be issued by Western."  Id. ¶ 189.  This is sufficient to allege at least one ATDS violation by Great Western.

### 2.  Count II

In Count II, Dobronski alleges that Calls 3 and 13 were recorded message calls in violation of the TCPA and its implementing regulations.  See Am. Compl. ¶¶ 363–365 (citing 7 U.S.C. § 227(b)(1)(B) and 47 C.F.R. §64.1200(a)(3)).

Americo argues that the amended complaint includes no allegations to tie it to Calls 3 and 13.  Americo Mot. to Dismiss at 11–12.  Great Western makes no specific argument regarding Count II, and United argues that the Count should be dismissed against it "for the same reasons stated in [Family First's] motion" and because Dobronski has failed to allege vicarious liability.  United Mot. to Dismiss at 20–21.  Both are arguments that were already addressed by the magistrate judge.

The Court finds that Count II should not be dismissed as to Americo or United, as Calls 3 and 13 are plausibly related to both insurance companies.  In Call 3, Dobronski gave the agent the "canary trap" name "Arthur Heaton."  Am. Compl. ¶ 126.  In Call 6, Olivia Perez asked to speak with Arthur Heaton.  Id. ¶¶ 147-148.  In Call 5, Dobronski alleges that Perez tried to sell him insurance policies from Americo and United.  Id. ¶ 142.  In sum, Call 3 is connected to Call 6 by the "canary trap" name "Arthur Heaton," and Call 5 is connected to Call 6 by Olivia Perez.  Because Dobronski clearly alleges Americo and United's involvement in Call 5, he has alleged a plausible connection between the insurance companies and Call 3.

However, this Count is dismissed as to Great Western, because Dobronski alleges no connection between Great Western and Call 3 or Call 13.

26

### 3.  Count V

In Count V, Dobronski alleges "do not call" violations for all calls except Call 7.  See Am. Compl. ¶¶ 366-368 (citing 47 C.F.R. § 64.1200(c)(2)).

Americo argues that the Count should be dismissed as to it because Dobronski has created an "established business relationship" by the use of his "canary trap" names that renders the claims non-actionable.  Americo Mot. to Dismiss at 13–15.  Great Western makes no specific argument regarding Count V, and United "adopts by reference" the arguments made by Family First, which were already addressed by the magistrate judge.  United Mot. to Dismiss at 21.

Americo's argument is unpersuasive.  Some of the calls in which Dobronski alleges Americo's involvement were follow-up calls, and therefore, calls for which he established a business relationship.  But as the magistrate judge found, Dobronski has successfully alleged that some of the calls were truly unsolicited.  R&R at 21.  Because some of these unsolicited calls involve both allegations of "do not call" violations and Americo's involvement—such as Call 8, Am. Compl. ¶¶ 155–163—the Court finds this argument does not require dismissing Count V as to Americo.

The magistrate judge recommends that Count V be dismissed as to the individual agents, but not as to Family First.  See R&R at 39–43.  The regulation requires that causes of action be based on receiving more than one violative call in a 12-month period, and Dobronski had only alleged one call with respect to Family First.  Id.

For the same reason, the Court dismisses Count V as to Great Western but does not dismiss it as to Americo or United.  Dobronski has alleged that both Americo and United engaged in more than one "do not call" violation within a 12-month period—for Americo, Calls 5 and 9; for United,

Calls 5 and 7.  <u>See</u> Am. Compl. ¶¶ 137–144, 149–154, 164–169.  By contrast, Dobronski has

alleged only one violation on the part of Great Western—Call 12.  <u>See</u> <u>id.</u> ¶¶ 182–198.

### 4.  Counts VI–X

In Counts VI through X, Dobronski alleges that Defendants violated 47 C.F.R § 64.1200(d),

an implementing regulation of the TCPA which requires callers to have "instituted procedures for

maintaining a list of persons who request not to receive telemarketing calls made by or on behalf

of that person or entity."  <u>See</u> Am. Compl. ¶¶ 369–383.

Americo argues that these counts should be dismissed as to Americo because "only a small

number of the referenced calls bear any relation to Americo" and "Dobronski does not explain how

he would know about the Defendants' instituted procedures."  Americo Mot. to Dismiss at 15–16.

Great Western makes no specific argument regarding Counts VI–X, and United only argues that

Dobronski has not pleaded facts supporting vicarious liability, an argument the Court has already

addressed and rejected.  United Mot. to Dismiss at 21–22.

The magistrate judge recommends dismissing these counts as to all defendants except for

Vongdara, as "Dobronski has not plausibly alleged any facts related to the maintenance or details

of a written do not call policy for any defendant except for Vongdara."  R&R at 43–44.  For the

same reason, the Court will dismiss Counts VI–X as to all three insurance companies.

### 5.  Count XII

In Count XII, Dobronski alleges that Defendants violated (i) the provision of the MTCCCA

that prohibits callers from contacting telephone subscribers to deliver a recorded message for the

purpose of presenting commercial advertising to the subscriber (Mich. Comp. L § 484.125)(2)(a))

and (ii) the provision of the MTCCCA that prohibits callers from delivering "intrastate commercial

advertising if the caller activates a feature to block the display of caller identification information

that would otherwise be available to the subscriber" (Mich. Comp. L § 484.125(2)(b)).  See Am. Compl. ¶¶ 387–388.

The magistrate judge recommends dismissing any claim based on the second provision, as it only covers intrastate advertising.  The Court agrees; there is therefore no need to consider the insurance companies' arguments regarding § 484.125(2)(b).  The magistrate judge recommends allowing the claim to proceed to the extent it is based on § 484.125(2)(a).  No parties objected to that recommendation, and the Court adopts it.

In its motion to dismiss, Americo argues that "the small handful of the referenced calls bearing any relation to Americo appear to have been answered," so "there was no 'recorded message' delivered in violation" of the MTCCCA.  Americo Mot. to Dismiss at 17.  Great Western argues that Dobronski has not alleged that Great Western delivered any recorded message to him.  Great Western Mot. to Dismiss at 91.  United "adopts by reference" the arguments made by Family First, which were already addressed by the magistrate judge.  United Mot. to Dismiss at 22.

Because this claim relies on Calls 3 and 13—the same calls that form the basis for Count II—the Court will not dismiss this Count as to Americo and United and will dismiss it as to Great Western.  As explained in the analysis of Count II, Dobronski has alleged plausible connections between Calls 3 and 13 and Americo and United.  Because Dobronski has alleged Great Western's involvement in Call 12 only, the Court dismisses Count XII as to Great Western.

### 6.  Count XIII

In Count XIII, Dobronski alleges that Defendants violated the provisions of the MHSSA that prohibit "a telephone solicitor" from making "a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal list."  See Am. Compl. ¶¶ 389–390 (citing Mich. Comp. L §§ 445.111a(5), 445.111b(1)).

Americo argues that, because none of these calls were "made" by Americo, Americo cannot be held liable.  Americo Mot. to Dismiss at 18–19.  Great Western makes a similar argument: "[Dobronski's] MHSSA claim fails because he has not alleged that [Great Western] made a telephone call."  Great Western Mot. to Dismiss at 19.  United "adopts by reference" the arguments made by Family First, which were already addressed by the magistrate judge.  United Mot. to Dismiss at 22.

The Court interprets Americo and Great Western's arguments to mean that plaintiffs cannot allege vicarious liability under the MHSSA.  Both Americo and Great Western cite the opinion in Visser v. Caribbean Cruise Line, No. 1:13-cv-1029, 2020 WL 415847, at *8 (E.D. Mich. Jan. 27, 2020), which states: "The TCPA and the MHSSA share a common element: making a telephone call."  But no one argues that the TCPA does not allow for vicarious liability—so Visser's comparison of the MHSSA to the TCPA does not mean plaintiffs cannot allege that parties are vicariously liable for violations under the statute.  The parties have failed to provide any support for such a reading of the MHSSA, and the Court will not adopt it.

The Court will not dismiss Count XIII as to any of the insurance companies.

## III.  CONCLUSION

For the reasons explained above, the Court (i) adopts in part the magistrate judge's report and recommendation (Dkt. 178); and (ii) grants in part and denies in part the motions to dismiss filed by Defendants United Omaha Life Insurance Company (Dkt. 113), Americo Financial Life and Annuity Insurance Company (Dkt. 103), Great Western Insurance Company (Dkt. 105), Family First Life, LLC (Dkt. 107), Vongdara, Adams, Grant, Powell, Wickham, Igweh, and Bonanno (Dkt. 106), and Scheifele and Christle (Dkt. 143).

The following claims survive dismissal:  Count I as to all Defendants; Count II as to Perez, Grant, Family First, Americo, and United; Count V as to Family First, Americo, and United; Counts VI through X as to Vongdara; Count XII as to Perez, Grant, Family First, Americo, and United; and Count XIII as to all Defendants.

SO ORDERED.

Dated:  March 29, 2024                                      s/Mark A. Goldsmith
     Detroit, Michigan                              MARK A. GOLDSMITH
                                  United States District Judge